**In re Lynne M. MACELVAIN, Debtor.**

**Bankruptcy No. 93–00278–APG.**

United States Bankruptcy Court,
M.D. Alabama.

Aug. 9, 1993.

Carol Koehler Ide, U.S. Dept. of Justice, Tax Div., Washington, DC, Patricia Allen Conover, Asst. U.S. Atty., Montgomery, AL, for IRS.

Samuel Kaufman, George W. Thomas, William B. Sellers, Kaufman & Rothfeder, P.C., Montgomery, AL, for debtor/respondent.

## OPINION ON MOTION TO DISMISS CASE

A. POPE GORDON, Bankruptcy Judge.

The United States of America filed a motion under 11 U.S.C. § 1112(b) to dismiss this case alleging that the debtor did not file the chapter 11 petition in good faith.

The motion came on for hearing on June 29, 1993 after which the motion was taken under advisement.[1]

The undisputed facts are as follows.

The Internal Revenue Service commenced seizure of the debtor's home and personal property on January 21, 1993 by virtue of a levy for nonpayment of taxes.[2]

The debtor filed a chapter 11 petition on January 22, 1993 admittedly to stop the seizure and sale of the property.[3]

The property seized is in storage. The sale of the seized property is currently stayed under 11 U.S.C. § 362(a).[4]

The debtor is a housewife and unemployed. She receives income from inherited stocks, bonds, and rental property which produce about $30,000 per year.

The debtor's living expenses, including taxes, insurance, and maintenance on real property, consume most, if not all, of the debtor's income.[5]

The debtor estimates that her real and personal property are worth approximately $660,000.[6]

The Internal Revenue Service filed a tax claim in the amount of $828,304.[7] The Alabama Department of Revenue filed tax claims totalling $941,747.[8] The tax claims of these two entities total $1,770,051. These tax claims are the only disputed claims. The claims of other creditors are undisputed and amount to only about $10,000.

The debtor filed a chapter 11 plan and disclosure statement on May 17, 1993.

The plan provides for determination of the debtor's tax liability in this court and payment of the taxes by liquidation of estate property. The debtor proposes to pay se-

---

1. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). These findings of fact and conclusions of law are made pursuant to Fed. R.Bankr.Proc. 7052.

2. The Service seized personal property consisting largely of household furniture and furnishings, household goods, jewelry, and coin collections.

3. The debtor also filed an adversary proceeding seeking damages and turnover of the seized property.

4. The Service filed a motion on January 28, 1993 to terminate the stay. The parties resolved the motion by agreeing to adequate protection payments in the amount of $600.00 per month to cover the costs of storing the property.

5. According to Schedules I and J, the debtor's expenditures total $26,796 annually. These listed expenditures, however, do not include all of the debtor's real property taxes and insurance nor the $600.00 per month adequate protection payment due Internal Revenue Service.

6. The debtor owns real property consisting of the debtor's home, a commercial building which is leased to Mooty's Business Supply, Inc., a one-half interest in her daughter's home, and a one-half interest in a condominium located in Panama City, Florida.

7. The Service filed a secured claim in the amount of $436,553 and an unsecured priority claim in the amount of $339,310. The remainder of the claim is a general unsecured claim.

8. The claims were filed as unsecured priority claims.

cured tax claims in full "through a process of liquidation and monthly payments" over a period of 15 years. The debtor proposes to pay unsecured claims in full over a period of six years.

■ The Internal Revenue Service contends that this case should be dismissed for cause under 11 U.S.C. § 1112(b) because the debtor's petition was not filed in good faith. The court agrees.

■ "Although there is no precise test for determining bad faith, courts have recognized factors which show an 'intent to abuse the judicial process and the purposes of the reorganization provisions'" of title 11.[9]

> Particularly when there is no realistic possibility of an effective reorganization and it is evident that the debtor seeks merely to delay or frustrate the legitimate efforts of secured creditors to enforce their rights, dismissal of the petition for lack of good faith is appropriate.

*Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.)*, 749 F.2d 670, 674 (11th Cir.1984).

The Service points to the following factors to support its contention that the debtor filed the petition in bad faith.

The debtor does not own sufficient property nor generate sufficient income to fund a plan of reorganization. The secured and priority claims of the Service alone exceed the value of the property owned by the debtor.[10] The debtor's living expenses consume most, if not all, of the income disclosed in the petition.[11]

The income generated by the debtor is speculative as a basis to fund a plan of reorganization. The debtor's rental income is produced by a month-to-month lease, and the stock dividends may or may not produce an even stream of income. The debtor is not employed outside the home.

The debtor's financial problems involve essentially a failure to pay past due federal and state income taxes. The debtor has a few unsecured nonpriority creditors whose claims are small ($10,000) in relation to the combined claims of the Internal Revenue Service and the Alabama Department of Revenue ($1,767,583). The debtor's disputes with the tax creditors could more inexpensively be resolved outside the bankruptcy forum.[12]

The debtor made no efforts prior to bankruptcy to work out her disputes with the Service, choosing instead to avoid payment by playing the role of a tax protestor.[13] The

---

9. *Barclays–American/Business Credit, Inc. v. Radio WBHP, Inc. (In re Dixie Broadcasting, Inc.)*, 871 F.2d 1023, 1027 (11th Cir.1989) (*quoting Natural Land Corp. v. Baker Farms, Inc. (In re Natural Land Corp.)*, 825 F.2d 296, 298 (11th Cir.1987). *See Phoenix Picadilly, Ltd. v. Life Ins. Co. (In re Phoenix Piccadilly, Ltd.)*, 849 F.2d 1393 (11th Cir.1988); *Natural Land Corp. v. Baker Farms, Inc. (In re Natural Land Corp.)*, 825 F.2d 296 (11th Cir.1987); *Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.)*, 749 F.2d 670 (11th Cir.1984); *Kitchens v. Georgia R.R. Bank and Trust Co. (In re Kitchens)*, 702 F.2d 885 (11th Cir.1983).

10. The secured claim ($436,553) and unsecured priority claim ($339,310) exceed the value of the debtor's property even using the debtor's value estimate—$660,000. Therefore, the assets are not sufficient to pay the secured and the unsecured priority claims of the Service even disregarding the State of Alabama unsecured priority tax claim in the amount of $941,747.

11. Absent disposable income and sufficient property to liquidate, the debtor has no ability to pay the priority claims in full within six years of assessment as required by 11 U.S.C. § 1129(a)(9)(C). Therefore, the debtor will not

be able to "effectuate a plan" which alone constitues grounds for dismissal under 11 U.S.C. § 1112(b)(2).

12. The debtor has already paid $17,000 to an attorney for representing her in this chapter 11 case. The Service can liquidate the property without the administrative costs attendant to liquidation under the provisions of title 11.

13. The Internal Revenue Service revenue officer testified:

> In this particular case, the only response I got from Ms. MacElvain I received in August [1992] and also, I believe, in October [1992]. I received a series of letters, all of which were questioning my knowledge of the tax laws, my authority to do my job, my authority to issue notices. They were letters that, in my experience, are the type of letters that you associate with protestor movements.... There was never any correspondence or telephone conversation with Ms. MacElvain that indicated that she wanted to discuss working out the tax liability.

The debtor's letters referred to by the revenue officer were admitted in evidence and substantiate the revenue officer's testimony.

first levy by the Service occurred in July 1992. The debtor failed to contest the taxes administratively, through the tax court, or through the district court prior to filing the petition.

The debtor filed bankruptcy one day after commencement of the seizure by the Internal Revenue Service. The timing of the filing of the petition evidences an intent to delay or frustrate the legitimate collection of taxes.

The court concludes that the presence of the above factors supports a finding of bad faith and therefore "cause" for dismissal under 11 U.S.C. § 1112(b).

The debtor contends that the tax claims will be reduced upon a determination of her tax liability by this court. The debtor contends that her assets will then be sufficient to fund a plan of reorganization.

■ However, the debtor failed to present any evidence of the likelihood of success of her objections to the tax claims. The debtor's mere speculation that litigation will be successful in reducing these tax claims is not sufficient to show a likelihood of rehabilitation.[14] This is particularly true in light of the fact that the government's tax "assessment ordinarily is afforded a presumption of correctness."[15] *Resyn Corp. v. United States*, 851 F.2d 660, 662–63 (3d Cir.1988).

The debtor is seeking determination of her tax liability by the bankruptcy court without the least proof that debtor even has the ability to reorganize. The debtor's argument that she did not learn of the Alabama tax claim until after filing the petition is without avail. The debtor did not offer proof that she is able to reorganize even in the absence of the Alabama tax claim.

14. The debtor argues that the plan is deliberately "vague" because the tax liabilities have not yet been determined. The argument is without merit. The debtor employed a tax attorney and certified public accountant (CPA) to represent her during the IRS audit of her tax returns. The debtor has had almost a year since the first IRS levy (July 1992) to determine her tax liability and shape a plan. Instead, at trial she testified:

    Q. Okay. And do you know or do you have an estimate of what your tax liabilities are at this time?

■ The court concludes that the case should be dismissed instead of converted to a case under chapter 7 because the secured and priority claims exceed the value of the property of the estate. The debtor does not have any equity that would be available for distribution to general unsecured creditors in a chapter 7 case.

A. I do not agree with the assessment and would like to be able to get that straight so that we would know how to proceed after that.

    Q. Okay. Is it possible for you to give us an exact number as to what those taxes should be?
    A. No. I could not give you an exact number. I'm sorry.

15. The secured claim of the Internal Revenue Service has been assessed. The unsecured priority claim has not been assessed because of the automatic stay.