**Matter of Walter R. WHITEHURST, III, Debtor.**

**Bankruptcy No. 94–00398–BGC–11.**

United States Bankruptcy Court, N.D. Alabama, Southern Division.

April 23, 1996.

Donald M. Wright and Stephen Porter-field, Birmingham, AL, for Debtor.

### ORDER DISMISSING CASE

BENJAMIN COHEN, Bankruptcy Judge.

The matter subject to this order is a *Motion to Dismiss, Convert, or in the Alternative, Appoint a Trustee* filed on January 5, 1996 by the United States Bankruptcy Administrator ("BA"). A trial was held on March 19, 1996.[1] Donald G. Wright and

---

1. A status conference on the confirmation of the debtor's proposed plan was also scheduled for

Stephen Porterfield, attorneys for the debtor; J. Thomas Corbett, attorney for the BA; and Richard O'Neal, attorney for the IRS, appeared.[2] No testimony was offered. The facts were uncontested. Two exhibits, one consisting of several documents, were admitted into evidence without objection. The parties stipulated to the other facts. The matter was submitted on those facts, the exhibits, the record and pleadings from the case and arguments of counsel.

## I. Introduction

The debtor contends that a confirmed chapter 11 plan affords his creditors the best prospect of payment; consequently, he asks the Court to deny the BA's motion and allow his case to continue to confirmation. The BA and the IRS contend that the case should be converted or dismissed, and of the two options both prefer conversion.[3] The BA and the IRS base their common position on the debtor's performance as a debtor in possession and both draw the conclusion that the debtor will not make a good faith commitment to achieve confirmation. For the rea-

sons explained below, the Court finds that this case should be dismissed.[4]

In summary the Court finds:

(A) in contravention of this Court's *Chapter 11 Operating Order* the debtor failed to file chapter 11 operating reports;[5]

(B) of the reports the debtor did file many were incorrect and misleading;[6]

(C) the debtor failed to pay post-petition taxes for almost two years which demonstrates a lack of good faith, especially considering that the debtor's admitted purpose for filing this case was to negotiate a repayment plan for unpaid pre-petition taxes and that during the pendency of this case the debtor's personal income exceeded $400,000.00 per year;[7] and,

(D) the debtor failed to act as a fiduciary for his creditors when he failed to follow this Court's operating order and failed to pay his post-petition taxes; such failures reveal that if this case continues, the debtor will not act as a fiduciary for his creditors or make a good faith attempt to effectuate a plan of reorganization.[8]

March 19, 1996. Because of the Court's consideration of the BA's motion, all agreed that consideration of confirmation should be delayed pending a ruling on that motion.

2. The IRS appeared in support of the BA's motion. There is no dispute that the debtor owes a significant amount of past due taxes.

3. A court may, pursuant to 11 U.S.C. § 1112(b), "convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause...." 11 U.S.C. § 1112(b).

4. The Court recognizes that debtor's counsel have made attempts to prevent the debtor's legal problems and have tried to extricate him from those problems. The Court also recognizes that debtor's counsel bear no responsibility for those problems.

5. The BA writes, "The Debtor has failed to file operating reports as required for the months of September, October and November, 1995. The BA expects that the Debtor will also fail to file an operating report for the month of December, 1995." *Motion to Dismiss, Convert, or in the Alternative, Appoint a Trustee* at 1 (January 5, 1996) (Proceeding No. 125). After the trial on this matter the Debtor submitted a proposed order that reads, "The Debtor has failed to file operating reports on a timely basis. The Debtor

is directed to file operating reports for the months of September through December of 1995 and for January and February of 1996, on or before April 1, 1996." Letter to the Court (March 20, 1996). The debtor's monthly reports for September 1995 through December 1995 are a part of BA Exhibit 2 but each is dated February 17, 1996.

6. Bankruptcy Administrator Exhibit 2 contains copies of certifications of the debtor for each of the months of January 1995 through December 1995 where the debtor affirms that all of his post-petition taxes were being withheld or were being paid as they became due.

7. Although an accounting has not been performed, the parties agree that the Debtor's income for 1995 is expected to be about the same as 1994. In describing the debtor's financial condition the BA writes, "The Debtor is a neurosurgeon, who apparently has no dependents. He lives in a $600,000.00 home, and owns four (4) automobiles, including a Jaguar and a Rolls Royce. *Motion to Dismiss, Convert, or in the Alternative, Appoint a Trustee* at 2 (January 5, 1996) (Proceeding No. 125). Similarly, the debtor's petition listed the value of the debtor's assets as $1,312,000.00.

8. The BA writes, "The BA further asserts that the Debtor has no reasonable likelihood of effectuating a Plan, or of consummating a confirmed

## II. Bases for Dismissal or Conversion

### A. Failing to File Chapter 11 Operating Reports

■ Pursuant to 11 U.S.C. § 1107(a) this Court enters a standard *Chapter 11 Operating Order* in every chapter 11 case filed in the Southern Division of the Northern District of Alabama.[9] The Chapter 11 order entered in this case on January 28, 1994 required the debtor to complete specific forms and to file those forms with the Court at specific times.[10] There is no dispute that the debtor either did not file the reports or did not file them timely.[11]

### B. Filing Inaccurate Chapter 11 Operating Reports

*Individual BA–01,* a form consisting of four affirmations and an accounting of bank balances, is one of the forms required to be filed with the Court every month an individual remains as a debtor in possession. That form reads in part:

AS THE DEBTOR IN POSSESSION, I AFFIRM THAT THE RESPONSES TO THE QUESTIONS BELOW ARE TRUE

TO THE BEST OF MY KNOWLEDGE AND BELIEF.

1. YES ___ NO ___ All post petition personal taxes are being withheld and/or all estimated taxes are being paid as they come due.

The form ends with this certification:

I CERTIFY THAT THE ABOVE INFORMATION IS TRUE TO THE BEST OF MY KNOWLEDGE AND BELIEF.

A signature line and a date line are provided.

At the hearing on these matters the attorneys of the debtor, the Internal Revenue Service and the United States Bankruptcy Administrator agreed that the debtor had not made 1995 estimated income tax deposits for any quarter of the calendar year 1995 [12]. At the hearing on this matter the Court asked about the status of the debtor's tax liability. This exchange with counsel reads in part:

The Court: What about '95?

IRS Counsel: The IRS is here today for the purpose of verifying that no deposits, no tax deposits, no estimated tax payments were made by Dr. Whitehurst during the tax year 1995, during the

---

Plan. The Debtor's pre- and post-petition tax liability totals nearly eight hundred thousand ($800,000.00) dollars. *Motion to Dismiss, Convert, or in the Alternative, Appoint a Trustee* at 3 (January 5, 1996) (Proceeding No. 125).

9. The *Chapter 11 Operating Order* entered by this Court carries the same weight and requires the same compliance as any other order of this Court. This order's importance and value are not diminished because the order is entered routinely in every chapter 11 case filed. Without compliance with the order, neither the Court nor Bankruptcy Administrator would be able to manage this Division's chapter 11 cases.

10. The debtor did not object to or appeal this order.

11. At least three courts have recognized the consequences of a failure to file such reports: *In re Brauer,* 80 B.R. 903 (N.D.Ill.1987) (holding that failure to file financial reports was bad faith and that such conduct was cause that justified the bankruptcy court's dismissal of the case); *In re Cloisters of Brevard, Inc.,* 117 B.R. 722 (Bankr. M.D.Fla.1990) (converting a chapter 11 case to chapter 7 for cause because the debtor failed to file monthly financial reports and disbursed estate funds without court approval); *In re Crosby,* 93 B.R. 798 (Bankr.S.D.Ga.1988) (recognizing, but not holding, that there is authority for dis-

missing a case for cause where a debtor did not file monthly operating reports until the morning of a hearing on the failure to file the reports). The *Cloisters* case is particular instructive. In *Cloisters* the debtor attempted to, "cure the delinquencies by filing reports and an amended disclosure statement' and plan of reorganization." *Id.* at 723. The court recognized that, "These curative acts were performed, however, only after the matters were discovered and action was taken by the United States Trustee ... to bring the delinquencies and defalcations to the attention of the Court." *Id.*

In this case the debtor may have filed all of the *required reports by the time this order was entered.* This is however of no consequence. The BA successfully proved that the debtor had a pattern of filing his reports late and that many were not filed until the BA became involved. The BA contends, and the forms in BA Exhibit 2 demonstrate, that the debtor was consistently late in complying with the Court's *Chapter 11 Operating Order.* If this Court allowed such a pattern to continue the debtor could always conveniently argue that all operating reports had been filed.

12. Agents from the Internal Revenue Service were present in court and were prepared to testify to the facts so stipulated.

period, calendar year 1995 to be applied to the 1995 tax liability.

Debtor's Counsel: Judge we don't dispute the failure to pay in '95. . . .

Unofficial Transcript of Official Court Recording.[13]

The *Individual BA–01* forms that comprise part of composite BA Exhibit 2 were signed by the debtor for the months of January 1995 through December 1995. These forms are in absolute disagreement with the debtor's tax payment history. In every instance where the debtor filed a BA–01 report he marked "YES," that all post-petition personal taxes were being withheld or all estimates were being paid when due. Given this conflict, the Court must assume that the debtor either intentionally filed false information with the Court or that he has so little regard for this Court's proceedings that he was indifferent to the affirmations he made.[14]

## C. Demonstrating Lack of Good Faith

The uncontested facts demonstrate that during his chapter 11 case the debtor had the ability to pay his taxes. And although he had that ability, rather than paying his taxes, the debtor chose to make other expenditures.

13. The debtor also failed to pay his 1994 taxes. BA Exhibit 1 is a certified copy of the IRS's record that the debtor failed to pay most of his 1994 post-petition taxes.

14. After considering the debtor's education and abilities, no one could believe that the debtor did not understand the documents he signed or that he did not know that he had not made any income tax payments for the calendar year 1995.

15. The question of whether post-petition wages are property of a chapter 11 debtor's estate is not an issue before this Court.

16. See *In re MacElvain,* 160 B.R. 672 (Bankr. M.D.Ala.1993) *aff'd sub nom. MacElvain v. Internal Revenue Service,* 180 B.R. 670 (M.D.Ala.1995) where the bankruptcy court found that a chapter 11 case was filed in bad faith where a debtor failed to pay taxes and failed to make efforts prior to bankruptcy to resolve disputes with the IRS and filed the chapter 11 case on the eve of commencement of seizure.

17. Debtors whose financial situations require them to decide what debts will be paid and what debts will remain unpaid often find themselves with an income tax predicament. In those situations the Court of Appeals for the Eleventh Circuit has found that where a debtor, "decided to

While the debtor maintained an annual personal income of over $400,000.00 he did not, for most of 1994 or for any of 1995, pay post-petition taxes. These actions reveal a lack good faith.[15]

The debtor's admitted purpose for filing this case was to negotiate a plan of repayment of past due, pre-petition taxes. Rather than demonstrating a good faith commitment to his chapter 11 case by paying current taxes as they became due, the debtor chose to ignore his obligations.[16] While enjoying an extraordinary income, the debtor chose not to pay his post-petition taxes. This he cannot do. If the debtor were not enjoying the protection of this Court and the Bankruptcy Code he would have the freedom to make such a choice but while he is a debtor in possession, he does not.[17]

## D. Failing to Act in a Fiduciary Capacity

A debtor in possession is required to act as a fiduciary. Because this debtor failed to follow the Court's operating order and failed to pay his post-petition taxes, two of the significant activities imposed on him at the filing of his chapter 11 petition, he failed to

use his limited funds to satisfy obligations other than his properly acknowledged income taxes does not render him a dishonest debtor, simply a debtor." *Haas v. Internal Revenue Service,* 48 F.3d 1153, 1156 (11th Cir.1995); followed in *Turner v. United States (In re Turner),* 182 B.R. 317 (Bankr.N.D.Ala.1995). This debtor's use of his extraordinary income does not however, qualify him for such status. The BA's analysis of the debtor's non-business expenditures for January through August of 1995 shows:

a) the Debtor spent an average of over one thousand ($1,000.00) dollars *per month* on groceries, even though he has no dependents;

b) the Debtor spent an average of over seven hundred ($700.00) dollars per month on restaurants and entertaining;

c) between January and March, 1995, the Debtor's records indicate that he spent nine thousand ($9000.00) dollars on "tree service";

d) the Debtor spent approximately $43,533.00 on retail and mail order purchases, and payments to credit card companies for specified merchandise.

*Motion to Dismiss, Convert, or in the Alternative, Appoint a Trustee* at 2 (January 5, 1996) (Proceeding No. 125).

act as a fiduciary for his creditors. This Court has no confidence that the debtor will, whether pursuant to an order of confirmation or not, begin to act in that capacity and make a good faith attempt to effectuate a plan of reorganization.[18]

The debtor contends that he can effectuate a plan of reorganization and has offered to sell "unencumbered" New York real estate and to sell his home in Mountain Brook, Alabama to fund his chapter 11 plan.[19] In light of the debtor's past performance these offers are hollow. This debtor's actions do not demonstrate that he has had any fiduciary concern for his creditors and the debtor has not given this Court any reason to believe that his future actions will be different from his past ones.[20]

### III. Best Interest of Creditors and the Estate and Confirmation, Dismissal or Conversion

■ There is sufficient "cause" to support a dismissal or conversion of this case but to do either must be in "the best interest of creditors and the estate." 11 U.S.C. § 1112(b).

The debtor argues first that confirmation of his proposed plan is in the best interest of creditors and second if the case is converted that the estate would be used to pay significant administrative expenses rather than to pay his creditors.[21] On the other hand, the BA and the IRS argue that this case should not be allowed to proceed toward confirmation and that conversion is in the best interest of creditors. The basis of this contention is that an orderly liquidation by a Court supervised trustee is better than a liquidation by the debtor.[22]

### A. Confirmation

The Debtor contends that confirmation rather than dismissal or conversion is in the best interest of creditors. As explained above, the Debtor has not demonstrated that he will make a good faith attempt towards confirmation. And based on post-petition facts this Court has no confidence that the Debtor would consummate a confirmed plan even if one were available.

### B. Dismissal or Conversion

Neither this Court nor a court appointed trustee could effectuate an orderly liquidation better than the IRS. The debtor's

---

**18.** The debtor's confirmation process began on March 14, 1994. On December 9, 1994 the debtor objected to a claim of National Finance Company, Inc. That claim involved the question of the value of, and the deficiency owed on, a condominium with a foreclosed mortgage. Because the property was located in New York state, this Court was required to apply the law of the state of New York. The matter was taken under advisement on April 3, 1995. During the time the Court was considering the objection to claim, status conferences on confirmation of the debtor's plan were scheduled but continued. The final conference was held on June 26, 1995. At that time the Court suggested that confirmation should be considered only after an order was entered on the objection to claim. On November 14, 1995 the Court issued a ruling in the debtor's favor reducing the claim from $58,-952.11 to $8,348.48. *Order Reducing Claim of National Finance Company, Inc.,* (Proceeding No. 117).

The Bankruptcy Administrator and the IRS contend that the debtor delayed his confirmation process and should be penalized for that delay. The debtor has been prepared to consider the issue of confirmation. The delay in considering confirmation occurred because of this Court's consideration of the objection to claim. The debtor should not be penalized for that delay; however, the debtor should not be excused from

satisfying the other requirements imposed on him while he is a debtor in this Court. And, it is the debtor's failure in this regard that is the basis of this Court's order to dismiss this case, not a failure to proceed to confirmation.

**19.** Debtor's counsel estimates the market value of the home is $600,000.00 and that the home is encumbered only by a lien of approximately $350,000.00.

**20.** In *In re Cloisters of Brevard, Inc.,* 117 B.R. 722 (Bankr.M.D.Fla.1990) the court wrote, "This case does not present a simple failure by the debtor to 'dot the i's and cross the t's,' as the debtor argues, nor does curing the defects cleanse the debtor of its initial wrongdoings. The debtor simply failed to exercise its fiduciary duty as a debtor-in-possession." *Id.* at 723 (citing *In re Devers,* 759 F.2d 751, 754 (9th Cir. 1985)).

**21.** The debtor's plan proposes to pay unsecured creditors in full.

**22.** Apparently the debtor's medical practice has generated significant accounts receivable estimated at $266,000.00. The BA believes that a chapter 7 trustee would be the better collector of those funds.

debts consist primarily of unpaid taxes. See note 24 below. The IRS should be allowed to collect those debts. Without question a dismissal of this case would automatically allow the IRS to institute such proceedings.[23]

The BA argues that there is a possibility that unsecured creditors would be paid if the debtor's assets were liquidated by a trustee. This may be true but it is speculative at best. In making his proposal for a chapter 11 reorganization, the debtor offered to sell "unencumbered" New York real estate. No one involved in this case, including the IRS (the potential beneficiary of such a sale) has been able to estimate what would be a realistic return for that property. To wait for a chapter 7 trustee to sell the property would be an unreasonable delay.

In addition to the New York real estate the debtor offered to sell his Mountain Brook, Alabama residence, a home with an approximate market value of $600,000.00 encumbered by a lien of approximately $350,-000.00. If a trustee sold the property, any profit may be subject to the claims of the IRS. If this occurs, the unsecured creditors would receive nothing. On the other hand, given the debtor's income, if this case is dismissed, unsecured creditors, like all other creditors of the debtor, would have an opportunity to collect their debts from whatever assets the debtor had at the time of the dismissal, or that the debtor generates in the future.[24] Given the debtor's historical earnings creditors would be able to collect directly from the debtor. Neither confirmation nor conversion would offer better assurances; consequently dismissal rather than confirmation or conversion is in the best interest of creditors and the estate.

## IV. Conclusion

The debtor failed to file his chapter 11 operating reports in contravention of this Court's order. The debtor filed incorrect and misleading information with the Court which at best demonstrated an indifference to this Court's order and at worst was a deliberate attempt to mislead the Court and the Bankruptcy Administrator. Because this case was filed with the admitted purpose of preparing a plan of repayment for past due taxes, the debtor's failure to pay post-petition taxes demonstrated bad faith. Because this debtor failed to follow this Court's operating order and failed to pay his post-petition taxes, he has failed in his duty to act as a fiduciary for his creditors and this Court does not have any confidence that the debtor will, whether pursuant to an order of confirmation or not, begin to act in his capacity as a fiduciary and make a good faith attempt to sell his property to fund a plan of reorganization.

While any of the above facts would be a sufficient basis for this Court to dismiss this case, collectively these factors demonstrate a complete lack of good faith on the part of the debtor. Based on the facts the Court finds that cause exists for purposes of dismissal under 11 U.S.C. § 1112(b). Based on the authority of the opinion of the Court of Appeals for the Eleventh Circuit in *Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.),* 749 F.2d 670 (11th Cir.1984), the Court finds that this case is due to be dismissed.[25]

23. On April 4, 1996 the IRS filed a *Motion to Lift Stay*, seeking permission to collect the past due taxes. A separate order on that matter has been entered contemporaneously with this order.

24. The secured claims the debtor lists on his petition consist of only those for his house and automobiles. The unsecured priority creditors claims listed are only for taxing authorities including the State of Alabama, the Internal Revenue Service, Jefferson County, Alabama, the City of New York, Orange County (Orlando), Florida, and the Town of Malone, New York. Only eight unsecured claims are listed and those claims total only $22,248.39.

25. The Court of Appeals for the Eleventh Circuit recognized that:

[T]here is no particular test for determining whether a debtor has filed a petition in bad faith. Instead, the courts may consider any factors which evidence "an intent to abuse the judicial process and the purposes of the reorganization provisions" or, in particular, factors which evidence that the petition was filed "to delay or frustrate the legitimate efforts of secured creditors to enforce their rights."

*Phoenix Piccadilly, Ltd. v. Life Insurance Co. of Virginia, et al. (In re Phoenix Piccadilly, Ltd.),* 849 F.2d 1393, 1394 (11th Cir.1988) (quoting *Albany Partners, Ltd. v. Westbrook (In re Albany Partners,*

It is therefore **ORDERED, ADJUDGED AND DECREED** that:

1. This case is **DISMISSED**;

2. The United States Bankruptcy Administrator's *Motion to Dismiss, Convert, or in the Alternative, Appoint a Trustee* is **GRANTED** to the extent of dismissal of this case; and

3. The status conference scheduled for March 19, 1996 and continued pending a ruling on this matter will not be held.

### ORDER DISMISSING THE INTERNAL REVENUE SERVICE'S MOTION TO LIFT STAY

This matter came before the Court on a *Motion to Lift Stay* filed on April 4, 1996 by the Internal Revenue Service. After notice, a preliminary hearing was held on April 22, 1996. A final hearing was scheduled for April 30, 1996. The Court has this day entered an Order dismissing the case; consequently the *Motion to Lift Stay* is also dismissed. The scheduled final hearing will not be held.

It is so **ORDERED**.

*Ltd.),* 749 F.2d 670, 674 (11th Cir.1984)). Where, as in the instant case, a determination of a debtor's lack of good faith comes some time after the case was filed but is based on circumstances that unfolded after the filing, a court could conclude that the case was initially filed in bad faith. But whether a case is filed without good faith or a debtor conducts the case without good faith, this Court recognizes *In re Albany* as authority to dismiss a case at any time for "cause" which includes an existing or developing lack of good faith.