In re Sam T. ROBINO, Debtor.

George Babakitis, as Administrator Ad Colligendum of the Estate of Joseph T. Robino, Jr., Plaintiff,

v.

Sam T. Robino, Defendant.

Sam T. Robino, Plaintiff,

v.

Southpace Properties, Inc., Defendant.

Bankruptcy No. 98–07508–BGC–11.
Adversary Nos. 99–00047, 99–00169.

United States Bankruptcy Court,
N.D. Alabama,
Southern Division.

Sept. 30, 1999.

Mark Pickens, Birmingham, Alabama, for debtor.

Samuel Maples, Birmingham, Alabama, for George Babakitis.

Southpace Properties, Inc., pro se defendant.

Tim Lupinacci, Birmingham, Alabama, Gary Farris, Atlanta, Georgia, for Beal Bank.

## ORDER DISMISSING MAIN CASE and Resolving All Other Pending Main Case Matters AND MEMORANDUM OPINION In Adversary Proceedings

BENJAMIN COHEN, Bankruptcy Judge.

### I. Introduction

The debtor and members of his family have been fighting over certain family assets for years. During that time, those disagreements have produced multiple state court actions, many of which were unresolved when the debtor filed the pending Chapter 11 case on November 17, 1998. This was unfortunate. Because of the intensity of the disputes and the participants' associated hostilities, those matters quickly became the dominating force in this case, and predictably became a negative influence. This Court's attempts, and those of others, to counteract that influence, either through suggestions or direct orders, failed. Disappointingly, so has this case. There has never been, and there is not now, any evidence that those involved in the state court matters or this Chapter 11 case could ever timely resolve their differences in a bankruptcy context. Consequently, for the reasons expressed below, this Court finds that this case, and its two related pending adversary proceedings, should be dismissed.

### II. Background

#### A. The Parties

The parties participating in the matters pending before this Court are:

1. Sam T. Robino, the debtor-in-possession. Mr. Robino is represented by Mark Pickens, his bankruptcy attorney and Blake Payne, his attorney for related state court matters;

2. George Babakitis, the Administrator Ad Colligendum for the Estate of Joseph T. Robino, Jr., the debtor's deceased brother. Mr. Babakitis is represented by Samuel Maples;

3. Beal Bank, SSB ("Beal Bank") the mortgagee on property described by the parties as the Lorna Village Shopping Center. Beal Bank is represented by Gary Farris and Tim Lupinacci;

4. Mr. Sam Raine, Jr., the executor of the estate of Ester Robino, the debtor's deceased mother. Mr. Raine represents himself;

5. Mrs. Shirley Robino, the debtor's spouse. Mrs. Robino is represented by William Thomley;

6. Mr. Richard G. Poff, Jr., an attorney who represented the debtor in former non-bankruptcy matters and who has filed a claim in this Court for fees associated with that representation. Mr. Poff represents himself;

7. The United States Bankruptcy Administrator for the Northern District of Alabama. The Bankruptcy Administrator is represented by Thomas Corbett, Division Attorney.

#### B. Pending Matters

The 17 main case matters pending before this Court are:

1. *Motion for Appointment of Trustee* (filed on December 2, 1998 by George Babakitis, Administrator Ad Colligendum for the Estate of Joseph Thomas Robino, Jr.—Proceeding No. 11). This matter was taken under advisement by the Court on April 15, 1999, after a hearing on that date;

2. *Beal Bank's Renewed Motion for Relief From The Automatic Stay* (filed on March 1, 1999—Proceeding No. 37). This matter was taken under advisement by the Court on April 15, 1999, after a hearing on that date;

3. *Motion for Extension of Time* (to file Chapter 11 Plan and Disclosure Statement filed on March 10, 1999 by the Debtor (through its attorney)—Proceeding No. 41). The matter was taken under advisement by the Court on August 5, 1999, after a hearing on that date;

4. *Objection to Debtor's Motion for Extension of Time* (filed on April 7, 1999 by the Bankruptcy Administrator—Proceeding No. 46). This matter was taken under advisement by the Court on August 5, 1999, after a hearing on that date;

5. *Motion to Convert or in the Alternative to Dismiss* (filed on July 1, 1999 by the Bankruptcy Administrator—Proceeding No. 66). This matter was taken under advisement by the Court on August 5, 1999, after a hearing on that date;

6. *George Babakitis' Motion for Emergency Hearing on His Motion for Relief from Automatic Stay* (filed on July 8, 1999—Proceeding No. 70). This matter was taken under advisement by the Court on August 5, 1999, after a hearing on that date;

7. *Objection to Appointment of a Trustee* (filed on March 10, 1999 by Richard G. Poff, Jr.—Proceeding No. 40). No hearing has been held on this matter;

8. *Order* (filed on June 9, 1999 by the Debtor, **pro se,** which the Court considers as the Debtor's Request for Release of Funds from a Cash Management Account Managed by Merrill Lynch—Proceeding No. 60). No hearing has been held on this matter;[1]

9. *Order* (filed on June 9, 1999 by the Debtor, **pro se,** which the Court considers as the Debtor's Request for Rent Payments from Citgo, First Independent Baptist Church and Tameron Truck Center—Proceeding No. 61). No hearing has been held on this matter;

10. *Trustee's and Debtor's Objection to Claim* (of Beal Bank) (filed on June 21, 1999 by the Debtor, **pro se**—Proceeding No. 63). No hearing has been held on this matter;

11. *Motion to Remove Sam Raine, Jr. as Executor of the Estate of Esther Romano Robino* (filed on June 29, 1999 by the Debtor, **pro se**—Proceeding No. 65). No hearing has been held on this matter;

12. *Motion for New C.P.A.* (filed on August 2, 1999 by the Debtor, **pro se**—Proceeding No. 73). No hearing has been held on this matter;

13. *Motion for Mediation* (filed on August 2, 1999 by the Debtor, **pro se**—Proceeding No. 74). No hearing has been held on this matter;

14. *Motion for Special Examiner* (filed on August 4, 1999 by the Debtor, **pro se**—Proceeding No. 75). No hearing has been held on this matter;

15. *Motion for the Court to Take Judicial Notice* (filed on August 4, 1999 by the Debtor, **pro se**—Proceeding No. 76). No hearing has been held on this matter;

16. *Debtor's First Motion to Amend Creditor's List* (filed on August 4, 1999 by the Debtor, **pro se**—Proceeding No. 77). No hearing has been held on this matter;

17. *Debtor's Motion to Transfer Cases from the 10th Judicial Circuit of*

---

**1.** Although the debtor is represented by counsel, within the last three months the debtor has filed ten "pleadings" pro se. See items 8 through 17 above. The Court presumes these were filed without advice of counsel.

*Alabama and the Probate Court of Jefferson County, Alabama, to the United States Bankruptcy Court* (filed on August 5, 1999 by the Debtor, **pro se**—Proceeding No. 78). No hearing has been held on this matter.[2]

The two adversary proceedings pending before this Court are:

1. *George Babakitis, as Administrator Ad Colligendum of the Estate of Joseph T. Robino, Jr. vs. Sam T. Robino*, A.P. No. 99–00047, filed on February 16, 1999. This matter is a complaint to determine the dischargeability of a debt and for injunctive and equitable relief; and

2. *Sam T. Robino, v. Southpace Properties, Inc.*, A.P. No. 99–00169, filed on May 18, 1999. This matter is a complaint requesting turnover of all monies held by Southpace Properties, Inc. regarding the Lorna Village Shopping Center to the debtor.[3]

**2.** One additional main case matter is pending before the Court; however that matter, an *Application for Approval of Employment of Professional Person* (filed on January 7, 1999 by the Debtor requesting the employment of the law office of Mark B. Turner—Proceeding No. 22), is in limbo. At the hearing on this application, the Court conditioned approval of the application on satisfaction of certain requirements. Those requirements have not been met. Therefore, the application has not been approved.

**3.** This matter was partially resolved when the defendant paid the funds requested into this Court. But because others than the debtor assert claims to these funds, the funds are still held by this Court. When this adversary pleading is dismissed along with the case, this Court will instruct the Clerk of this Court to pay the funds to the state circuit court that appointed the receiver who collected the funds.

**4.** These evidentiary hearings included:

## III. Findings of Fact

Evidentiary hearings have been held in many of the above-mentioned 17 main case matters.[4] Those hearings have produced

| Date | Subject | Appearing |
|---|---|---|
| 01/06/99 | Final hearing on the <u>Motion for Relief From Stay</u> filed by Beal Bank; <u>Motion to Appoint a Trustee</u> filed for George Babakitis, Administrator Ad Colligendum of the Estate of Joseph Thomas Robino, Jr. | Sam Robino, debtor; Mark Pickens for the debtor; Gary Farris for Beal Bank; Samuel Maples, for George Babakitis; George Babakitis, Administrator Ad Colligendum for the Estate of Joseph Thomas Robino, Jr.; William Thomley for Shirley Robino; Blake Payne for the debtor; and Billy Eyster, a witness called by the debtor. |
| 03/10/99 | <u>Motion to Appoint a Trustee</u> filed for George Babakitis, Administrator Ad Colligendum of the Estate of Joseph Thomas Robino, Jr. | Sam Robino, debtor; Mark Pickens for the debtor; Tim Lupinacci for Beal Bank; Samuel Maples, for George Babakitis; George Babakitis, Administrator Ad Colligendum for the Estate of Joseph Thoms Robino, Jr.; William Thomley for Shirley Robino; Blake Payne for the debtor; Billy Eyster, a witness called by the debtor; and David Corey, a representative of Southpace Properties, Inc. |
| 04/15/99 | Final hearing on the <u>Renewed Motion for Relief From Stay</u> filed by Beal Bank; <u>Motion to Appoint a Trustee</u> filed for George Babakitis, Administrator Ad Colligendum of the Estate of Joseph Thomas Robino, Jr. | Sam Robino, debtor; Mark Pickens for the debtor; Gary Farris for Beal Bank; Samuel Maples, for George Babakitis; George Babakitis, Administrator Ad Colligendum for the Estate of Joseph Thoms Robino, Jr.; Shirley Robino, debtor's spouse; William Thomley for Shirley Robino; Blake Payne for the debtor; and Thomas Corbett for the Bankruptcy Administrator. |
| 08/05/99 | Bankruptcy Administrator's <u>Motion to Convert or in the</u> | Sam Robino, debtor; Mark Pickens for the debtor; |

extensive records. In considering all of the pending matters, this Court has considered all of those records as well as its own records. From those considerations, this Court has made certain findings of fact. Those findings are divided into four areas which include: A. Probate Matters; B. The Debtor's Real Estate Holdings; C. The Debtor's Conduct in State Court; and D. The Debtor's Conduct in this Court Since the Filing of the Chapter 11 Case.

## A. Probate Matters

Because of the disagreements within the debtor's family, the debtor is involved in a myriad of probate matters.[5] From the evidence presented, this Court has summarized the history that these matters share.[6]

Joseph Thomas Robino, Jr. and Sam T. Robino were brothers. Their parents were Joseph Thomas Robino, Sr. and Ester Romano Robino. Joseph Robino, Sr. died on September 17, 1982. His will, and the probate of his estate in 1982, created a testamentary trust naming the brothers Joseph and Sam as the beneficiaries.

Ester Robino died on February 24, 1995. Mr. Sam Raine, Jr., was appointed as executor of that estate, the position subject to one of the debtor's pending pro se pleadings.[7] Shortly after Ester Robino's death, on October 6, 1995, by state court order, the assets of the Joseph Robino, Sr. testamentary trust were distributed to the brothers, Joseph Robino, Jr. and Sam Robino. These assets included interests in

---

Alternative to Dismiss; George Babakitis' Motion for Emergency Hearing on his Motion for Relief from Automatic Stay; Debtor's Motion for Extension of Time to File Chapter 11 Plan and Disclosure Statement; Bankruptcy Administrator's Objection to Debtor's Motion for Extension of Time.

Gary Farris for Beal Bank; Dena Meek, a representative of Beal Bank; Samuel Maples, for George Babakitis; George Babakitis, Administrator Ad Colligendum for the Estate of Joseph Thomas Robino, Jr.; Kirk Dobbins, real estate broker (witness called by George Babakitis); William Thomley for Shirley Robino; Blake Payne for the debtor; Sam Raine, Jr., Executor of the Estate of Ester Robino; Thomas Corbett for the Bankruptcy Administrator.

5. Some of the pending state court actions may not be formal probate matters but as far as this Court is able to tell, all relate to matters involving probate matters or property associated with probate matters. In that context, this Court uses the term "probate" in the general sense and not as the legal term describes. For example, on June 3, 1999, and June 24, 1999, this Court granted "relief from the automatic stay" to allow a state court of appeals to continue with a matter (involving estate assets of a member of the debtor's family) initiated by the debtor at the trial level and appealed by the debtor after an unfavorable decision. In that matter the debtor claimed that although he was the prosecuting party, the appeals were stayed by his pending bankruptcy case. In rejecting the debtor's position, this Court relied on *Roberts v. Commissioner*, 175 F.3d 889 (11th Cir.1999). In that case the court found that the "against the debtor" provision in section 362(a)(1) did not include judicial proceedings brought by the debtor. In regards to the instant matters, clearly this Court's involvement was not in relation to "probate" matters; however, the state court complaint filed by the debtor against the movants seeking relief from the stay from this Court to continue with that case, was a probate matter as it directly concerned the administration of assets of the estates of deceased members of the debtor's family.

6. The summary is based on all of the evidence before the Court although the Court specifically relies on Debtor's Exhibit 4, Hearing on January 6, 1999; Movant's Exhibit 2, Hearing on March 10, 1999; and the dischargeability complaint filed on February 16, 1999, against the debtor in this Court by the Administrator, Ad Colligendum of the estate of Joseph Thomas Robino, Jr.

7. Sam Raine, Jr. is the debtor in *In re Raine*, Chapter 7 case no. 98–03693, filed in this Court on June 4, 1998. On June 28, 1999, another member of this Court granted a motion for relief from stay filed on behalf of the estate of Joe M. Romano to allow the estate to petition the state court to remove Sam Raine, Jr. from the position of executor of the estate. As far as this Court member can tell, Mr. Raine still serves in that capacity.

many of the properties, and of course the proceeds from those properties, now in dispute among the debtor and the representatives of his brother's estate and his mother's estate.

Joseph Robino, Jr. (the debtor's brother) died on April 20, 1998. A will purportedly executed on March 24, 1998, was offered for probate. In addition to other provisions, that document included, "I leave my sorry no good brother Nothing not one red cent and order that my executor continue any law suit I have pending against Sam T. Robino." Debtor's Exhibit 4, hearing on January 6, 1999, as an attachment to the debtor's motion to consolidate numerous probate matters, including the debtor's contest of that very will.[8]

This Court has not been able to identify all of the matters pending in state court

8. The debtor contends this will is not valid and that his brother died intestate and therefore that he, Sam Robino, was the sole beneficiary of that entire estate. The administrator of that estate testified that he has seen, since the brother's death, at least five other wills. He testified that although none have been offered for probate, none include Sam Robino as a beneficiary and in fact all specifically exclude him.

9. The debtor's pro se Motion to Transfer Cases from the 10th Judicial Circuit of Alabama *and the Probate Court of Jefferson County, Alabama, to the United States Bankruptcy Court* list nine different cases which this Court assumes relate to these matters. In the motion of the administrator of the estate of Joseph Robino, Jr., entitled, *George Babakitis' Motion for Emergency Hearing on His Motion for Relief from Automatic Stay* the administrator lists three cases. These are: (1) CV 98–00527, described in that pleading as, "The Case of George Babakitis, Administrator Ad Colligendum vs. S.T. Robino, et. al."; (2) CV 97–00098 described in that pleading as, "Dee Kilgore et. al. vs. Sam T. Robino, et. al."; and, (3) CV 98–03520 described in that pleading as, "Will Contest and Administration of the Estate of Joseph T. Robino, Jr."

10. This Court has no reason to believe that any of the cases mentioned have been concluded and it is apparent from representations of the parties that all of those cases involve, or are related to, probate matters in

that relate to the administration of the above-mentioned probate estates. But this Court is convinced there are many and that most are complicated.[9] These cases include contests of wills, suits against administrators, executors, or trustees. Some even include unexpected defendants such as the Honorable Spencer T. Bachus, III, Congressman for the Sixth Congressional District of Alabama and the Honorable Daniel A. Crowson, Presiding Judge for the Eighteenth Judicial Circuit of Alabama, Shelby County, Alabama.[10]

## B. The Debtor's Real Estate Holdings

The evidence demonstrates that the debtor's family's real estate holdings must be significant and thus, whatever interest the debtor may have must also be significant.[11] Three of those properties have been highlighted in this case. Those are:

dispute among the debtor and others including the other parties before this Court.

11. In his bankruptcy petition, the debtor listed 33 different pieces of real estate as assets of his estate, with a total "current market value of debtor's interest" without deducting any secured claims or exemptions as $4,185,-900. See Debtor's Schedule A—Real Property. These properties include: 108 Oxmoor Road, Homewood, · Alabama; 1108 Cullom Street, Birmingham, Alabama; 1157 Cherry, Bessemer, Alabama; 1232 15th Street SW, Birmingham, Alabama; 1304 North 31st Street, Birmingham, Alabama; 1308 Long, Bessemer, Alabama; 1320 Long, Bessemer, Alabama; 1530 4th Avenue North, Bessemer, Alabama; 1819 8th Avenue North, Bessemer, Alabama; 1821 Catala Road, Vestavia Hills, Alabama; 2104 Decatur Highway, Fultondale, Alabama; 2242 Finley Avenue, Birmingham, Alabama; 2713 9th Avenue, Bessemer, Alabama; 2715 9th Avenue North, Bessemer, Alabama; 2901 Green Valley Road, Birmingham, Alabama; 3137 Lorna Road, Hoover, Alabama; 3146 Lorna Road, Hoover, Alabama; 3560 Independence Drive, Homewood, Alabama; 4209 49th Avenue North, Birmingham, Alabama; 4249 49th Avenue North, Birmingham, Alabama; 4701 41st Street South, Birmingham, Alabama; 4704 41st Street North, Birmingham, Alabama; 4705 41st Street North, Birmingham, Alabama; 4944 Valleydale Road, Birmingham, Alabama; 5326 Woods Avenue, Bessemer, Alabama; 549 Interlox Road, Birmingham, Alabama; 647 Rumson Road, Homewood,

1. Valleydale Road in Shelby County, Alabama—The parties agree that this real estate is free from a mortgage. Testimony at the hearing on August 5 demonstrated that an offer to purchase for $350,000 has been made;

2. Lorna Village Shopping Center—The parties agree that this real estate is subject to the mortgage of Beal Bank. The property was appraised at $650,000 in 1995 (Babakitis Exhibit 5, Hearing on August 5, 1999) and an offer to purchase for $500,000 has been made. (Babakitis Exhibit 1, Hearing on August 5, 1999) [12]; and

3. Hacienda Apartments—The parties agree that this real estate is also free from a mortgage. It was appraised at $360,000 in 1995 (Babakitis Exhibit 4, Hearing on August 5, 1999), and an offer to purchase for $310,000 has been made.[13]

While the parties disagree about the condition of each of these properties and disagree as to whether the properties have been administered in a manner sufficient to maximize the interests of all concerned, the Court agrees with the debtor's opponents. From the evidence presented at all of the hearings, including lay and expert testimony, (but particularly the real estate broker testimony at the March 10, 1999, hearing), the Court finds that the conditions of the principal properties are not ideal and that these properties have not been administered to reap maximum benefits. The properties that can be leased are not being leased, and the physical conditions of those that are being leased are not as they should be. Income from the properties has fallen and has not been maximized. And the properties have not been adequately marketed either for lease or sale.[14]

In regard to the Lorna Village Shopping Center, the most substantial, there are additional problems. At the January 6, 1999, hearing, the debtor testified that property taxes for that property were not current. In his testimony at the August 5, 1999, hearing, the administrator of the Joseph Robino, Jr. estate agreed. And at the same hearing, a witness for Beal Bank estimated the delinquent amount to be $40,000.00.

## C. The Debtor's Conduct in State Court

On March 11, 1998, the Circuit Court for the Tenth Judicial Circuit of Alabama, Jefferson County, Alabama, issued an order appointing a receiver to conduct the daily management of certain properties claimed by the debtor and others. That order read:

TEMPORARY INJUNCTION
AND APPOINTMENT
OF RECEIVER

This matter coming on to be heard on March 5, 1998, and this Court having duly considered the arguments of coun-

---

Alabama; 6786 Hare Road, Bessemer, Alabama; 6788 Hare Road, Bessemer, Alabama; 806 Alabama Avenue, Bessemer, Alabama; 811 Maple, Birmingham, Alabama; Joyce Street, Birmingham, Alabama; Vincent Lot, Shelby County, Alabama.

The administrator of the estate of Joseph Robino, Jr. agrees. He testified at the August 5 hearing that as many as 33 different pieces of property may be involved in the disputes.

**12.** The property was assessed for tax purposes in 1999 for over $630,000. Debtor's Exhibit 1, Hearing on January 6, 1999. The parties agree that the amount owed on the bank's mortgage is approximately $350,000.

**13.** The administrator explained that the offers received for these properties were unsolicited and that no serious attempts to advertise or market had been made. The administrator also explained that the differences in values between the appraised amounts and the recent offers were because the properties had been neglected. Babakitis Exhibits 2 and 3, Hearing on August 5, 1999, and testimony of the witness.

**14.** Some rents have been collected from operation of the properties. But again, the parties disagree over ownership of those rents, and disagree over even who may collect those rents.

sel and having further reviewed the written briefs and exhibits supplied by the Plaintiff's attorney, it is hereby OR-DERED,

ADJUDGED and DECREED as follows:

1. Beal Bank, the Intervener, is hereby enjoined from proceeding with a foreclosure sale of the property located at 3137 Lorna Road, Hoover, Alabama and known as the Lorna Village Shopping Center, provided the Plaintiff post a surety bond or a cash bond in the amount of $25,-000.00 with the Court. This temporary injunction shall remain in force and effect pending further orders of the Court.

2. Effective immediately the Court appoints South Pace Property, Inc., as the Receiver of the property located at 3137 Lorna Road, Hoover, Alabama, as well as the other properties known as Hacienda Apartments, Cullom Street property and Green Valley property. With respect to the property known as Lorna Village Shopping Center, South Pace Properties, Inc., is hereby DIRECTED and ORDERED to take charge of the daily operations and to manage the property and to collect the rents, income and revenue from said property and after payment of all necessary operating expenses to pay the net proceeds into the Clerk's Office of the Circuit Court of Jefferson County.

3. The Jefferson County Circuit Court Clerk shall deposit said funds into an interest bearing account pending further orders of the Court.

5. [sic] This court retains jurisdiction over this matter.

DONE and ORDERED this 11th day of March, 1998

Signed: Judge T.M. Smallwood, Jr.

Movant's Exhibit 1, Hearing on January 6, 1999.[15]

On March 13, 1998, the same court entered an order that restrained the debtor from attempting to collect rents from those properties and required the debtor to pay any funds received from those properties to the state court clerk. The order also appointed the previously appointed receiver of the properties to be the manager of those properties. That order read:

## ORDER

This Court having taken testimony, listened to argument and having thoroughly reviewed the evidence and arguments of counsel during the preliminary injunction hearing, it is hereby ORDERED, ADJUDGED and DECREED as follows:

1. That the Defendants, S.T. Robino and Shirley Robino, be restrained and enjoined from:

(a) Collecting or attempting to collect any rents, monies, or proceeds from tenants of Lorna Village Shopping Center located at 3137 Lorna Road, Hoover, Alabama;

(b) Collecting or attempting to collect any rents, monies, or proceeds from tenants of Hacienda Apartments located at 3146 Lorna Road, Hoover, Alabama;

(c) Collecting or attempting to collect any rents, monies, of proceeds

---

15. According to the *Beal Bank SSB's Emergency Motion for Relief from the Automatic Stay,* filed in this Court on November 19, 1998, Proceeding No. 5, the judgment of the trial court relating to the *injunction* was reversed on October 23, 1998, and the matter remanded to the trial court with instructions to dissolve the injunction. (See attachment to the motion. See also corroborating testimony of the Administrator of the estate of Joseph Robino, Jr. at the August 5, 1999, hearing.) Beal Bank represented that after the injunction was dissolved, it advertised its foreclosure of the Lorna Village property with foreclosure to occur on November 23, 1998 at 1:30 p.m. The debtor filed the instant case on November 11, 1998.

from tenants of Cullom Street property located at 1108 Cullom Street South, Birmingham, Alabama;

(d) Collecting or attempting to collect any rents, monies, or proceeds from tenants of Green Valley property located at 2901 A & B Green Valley Road, Birmingham, Alabama; and

(e) Collecting or attempting to collect any funds derived from real property in which the Plaintiff and the Defendant both have an interest.

2. Defendants, S.T. Robino and Shirley A. Robino, are hereby ORDERED to pay into Circuit Court by payment to the Jefferson County Circuit Clerk's office any rents or monies received from any tenants of Lorna Village shopping Center, Hacienda Apartments, the Cullom Street property, or the Green Valley property which rightfully belongs to the Ward, Joseph Thomas Robino, Jr. and which are in the possession of and/or control of S.T. Robino or Shirley A. Robino, including but not limited to the February and March 1998 rents. Said payment shall be deposited in an interest bearing accounts by the Clerk of the Circuit Court.

3. SouthPace Properties, Inc., a real estate management company, is hereby appointed by the Court to manage the properties known as Lorna Village Shopping Center, Hacienda Apartments, the Cullom Street property, and the Green Valley property and to collect and disburse the rents received from the tenants in accordance with the standard practices normally accepted within the real estate industry as follows:

(a) Lorna Village Shopping Center rents shall be paid into the Jefferson County Circuit Clerk's office and deposited into interest bearing accounts until further order of this Court;

(b) Rents received from Hacienda Apartments, the Cullom Street property and the Green Valley property shall be disbursed equally to the Plaintiff and the defendant, less reasonable and ordinary expenses such as fees, taxes and insurance.

4. Defendant, S.T. Robino, is hereby ORDERED to prepare an accounting for the time period that he collected or received rents from the tenants of the above-mentioned properties. Said accounting should list all receipts and disbursements of all proceeds received by S.T. Robino during the time period that he collected or received rent from tenants at the above-mentioned locations. This accounting shall be submitted to the Court and the Plaintiff's attorney on or before April 1, 1998.

5. Defendant, S.T. Robino, is hereby ORDERED to deliver immediately and forthwith any and all copies of written leases to David Corey, the real estate agent at SouthPace Properties, Inc.

6. The Court reserves and retains jurisdiction over this matter and sets this matter for a compliance hearing on the 27th day of March, 1998, at 2:30 o'clock p.m.

7. This Order shall be delivered to the tenants of the above-described properties.

DONE and ORDERED this 13th day of March, 1998, at 3:00 p.m.

Signed: Judge T.M. Smallwood, Jr.

Movant's Exhibit 2, Hearing on January 6, 1999.

On June 11, 1998, the same court entered an order finding the debtor in contempt of court for failing to abide by the court's March 13 order. An arrest warrant was issued and the sheriff was directed to hold the debtor until the debtor

complied with that order. The June 11 order read:

### ORDER

Intervener, Beal Bank, SSB'S, ("Beal Bank") Motion To Show Cause was heard by this Court on June 10, 1998. Based upon argument of counsel, testimony of witnesses and the other evidence of record in this case, this Court hereby finds as follows:

1. Beal Bank's Motion To Show Cause (the "Motion") asked this Court to require S.T. Robino and Shirley A. Robino to show cause as to why they had not complied with this Court's March 13, 1998 Order (the "Order").

2. Just prior to the hearing on the Motion, S.T. Robino notified the Court by telephone that neither he nor his attorney would attend the hearing.

3. At the hearing, Shirley A. Robino, through counsel, presented the Court with an accounting for all monies received in connection with the Lorna Village Shopping, Center, Hacienda Apartments, Cullom Street property, Green Valley property, and all other real property in which Joseph Thomas Robino, Jr. has an interest. Because of her submission of said accounting and because the Court has no evidence to suggest that Shirley A. Robino is in violation of the other requirements of the Order, this Court finds that Shirley A. Robino is in compliance with the Court's Order.

4. S.T. Robino has failed to do the following which were specifically required of him by the Court's Order:

 a. file an accounting;

 b. cease collecting, rents, monies, or proceeds from the tenants of Lorna Village Shopping Center (the "Tenants");

 c. pay into Court any rents or monies received from the Tenants; and

 d. deliver to David Corey of South-Pace Properties, Inc. copies of all written leases with the Tenants.

Because of S.T. Robino's failure to comply with these requirements of the Court's Order, because S.T. Robino's activities continue to pose a danger of irreparable harm both to the parties involved in this action and to the Tenants, and because S.T. Robino has failed to attend the proceedings in connection with this matter, this Court finds that S.T. Robino is in CONTEMPT OF COURT.

The following is hereby ORDERED, ADJUDGED, and DECREED:

1. Pursuant to Rule 7OA(d) of the Alabama Rules of Civil Procedure, this Court hereby issues a writ of arrest against S.T. Robino; and

2. Pursuant to Rule 7OA(e)(2) of the Alabama Rules of Civil Procedure, the Sheriff is directed to take S.T. Robino into custody and hold him until he has complied with this Court's Order of March 13, 1998.

Done this 11th day of June, 1998 at 8:35 p.m.

Signed: Judge T.M. Smallwood, Jr.

Movant's Exhibit 3, Hearing on January 6, 1999.[16]

According to Mr. Robino's testimony at the hearing on January 6, 1999, he was arrested pursuant to that order and spent four nights in the Jefferson County (Alabama) Jail.[17]

---

[16]. All three state court orders contain relevant findings of fact. This Court finds, pursuant to res judicata and collateral estoppel, that those facts apply here. *Community Bank of Homestead v. Torcise,* 162 F.3d 1084, 1086–1087 (11th Cir.1998). And for purposes of the instant order, and related orders, the Court adopts those facts as part of its findings of fact.

[17]. The debtor contends that the contempt of court order was not valid and he has represented to this Court that an appeal has been filed.

## D. The Debtor's Conduct in This Court Since the Filing of the Chapter 11 Case

### 1. Violation of This Court's Chapter 11 Operating Order

#### a. Failure to File Operating Reports

Pursuant to 11 U.S.C. § 1107(a), this Court enters a standard *Chapter 11 Operating Order* in every Chapter 11 case filed in the Southern Division of the Northern District of Alabama.[18] That order was entered in this case on November 19, 1998.[19] It required the debtor to complete specific reports and to file those reports with the Court at specific times. In regard to those requirements, the debtor failed to comply with the order.

The debtor "timely" filed monthly operating reports for November 1998, December 1998, and January 1999. And he filed his February 1999 report (which was due on March 15, 1999) on April 26, 1999. However, as of the day of the hearing on the Bankruptcy Administrator's motion, that is August 5, 1999, the evidence demonstrated that the debtor had not filed any of the other required reports.[20] He did not file the monthly reports due for March 1999, April 1999, May 1999, June 1999, and July 1999, and he did not file the quarterly reports due for the quarters ending March 1999 and June 1999.[21]

#### b. Failure to File a Plan and Disclosure Statement or Explain Why These Have Not Been Filed

Paragraph N of the Chapter 11 Operating Order entered in this case reads:

> On or before 120 days after this case was filed, the Debtor–in–Possession shall file a plan and disclosure statement. If the Debtor does not file these documents within 120 days, it shall file on or before the 120th day a report to the Court explaining why a plan and disclosure statement have not been filed and shall describe what preparations are being undertaken to file those documents and shall specify a date when the plan and disclosure statement will be filed.

The debtor failed to comply with this provision of the order. He did not file a plan or disclosure statement by March 17, 1999, **and** *he did not file any report explaining why the documents have not been filed or what preparations are being made to file the documents and he has not offered a date on which this Court may*

---

**18.** The *Chapter 11 Operating Order* entered by this Court carries the same weight and requires the same compliance as any other order of this Court. This order's importance and value are not diminished because the order is entered routinely in every Chapter 11 case. Without compliance with the order, neither the Court nor the Bankruptcy Administrator would be able to manage this Division's Chapter 11 cases.

**19.** The debtor did not object to or appeal this order.

**20.** During final argument at the hearing on August 5, 1999, counsel for the debtor suggested that the reports were not filed because the debtor's accountants were holding the reports "hostage." The Court assumes that counsel was implying that the Court appointed accountants for the debtor would not turn-over either the information the debtor needed to complete the reports, or the reports themselves. The Court further assumes that the debtor's filing of his *Motion for New C.P.A.* on August 2, 1999, is related to whatever problems may exist. These assumptions are, however, of no consequence. The debtor has the responsibility to file the reports.

**21.** From the limited reports, the Bankruptcy Administrator was able to make a limited analysis of the debtor's financial condition. At the hearing on August 5, 1999, the Administrator represented that at best the debtor's management of his financial affairs is uneven. The debtor's business accounts payable as of the end of December 1998 were $12,086. The same for the end of January 1999 was zero; however, cash disbursements in January were only $1,625. While the debtor had a business profit in December 1998 of $3,070, he had a loss in February of $1,314. Revenue has steadily declined from $6,788 in December 1998, to $5,706 in January 1999, to $3,629 in February 1999. Accounts payables are increasing but cash is decreasing. The Administrator was unable to reconcile these figures. So is this Court.

*expect the documents will be filed.*[22] The debtor did however, file the following:

### Motion for Extension of Time

Comes now Sam T. Robino, Debtor, by and through his attorney of record, Mark A. Pickens, and hereby requests this Honorable Court grant an extension of time to file the Chapter 11 Plan and Disclosure Statement as required by Title 11 of the U.S. Bankruptcy Code.

WHEREFORE, the Debtor requests this Honorable Court grant an extension of time to file said Chapter 11 Plan and Disclosure Statement.

Respectfully submitted this 10th day of March, 1999.

Signed: Mark A. Pickens

Proceeding No. 41, filed March 10, 1999.[23]

### 2. This Court's Order of January 13, 1999

As discussed above, Beal Bank is the mortgagee on real estate referred to by the parties as the Lorna Village Shopping Center, one of the pieces of property in dispute. On November 19, 1998, Beal Bank filed a motion for relief from the automatic stay. An expedited preliminary hearing was held on November 20, 1998. This Court denied the motion and scheduled a final hearing for January 6, 1999. At the final hearing, the testimony demonstrated that Beal Bank had not received a mortgage payment since 1995, that there was substantial equity in the property, and that the debtor had failed to account for rents derived from the property.[24]

On January 13, 1999, this Court entered a final order denying Beal Bank's motion for relief from the automatic stay; however, that order required the debtor to make a $2000.00 per month adequate protection payment to the bank during the pendency of this case. In addition, the order required the debtor to open a separate interest bearing account for funds collected as rent from the property subject to the bank's security interest; required monthly bank statements for that account to be filed with the Court; and required payment of all funds from the account to be made only with agreement of the bank or failing that, by order of this Court.

The undisputed evidence before the Court is that the debtor failed to abide by the order. Of the eight payments due to have been paid since the order was entered, (as of the August 5 hearing) the debtor made only four.[25] And of those four, two were delivered to the bank the morning of the final hearing on the bank's renewed motion for relief from stay held on April 15, 1999.[26]

In regard to the request that the debtor consult with the bank, the evidence is clear that but for consultation on a payment for

---

22. This safety net provision is included in this Court's order because many debtors encounter problems in meeting this deadline. That failure is not fatal; however, the failure to file the report may be, as that report, once the deadline has been missed, is extremely important.

23. The Bankruptcy Administrator has objected to any such extension and as support recites many of the problems this Court now recognizes as reasons for the dismissal of this case.

24. This failure is similar to the debtor's failure to account to the state court for rents collected prior to the November 1999 filing in this Court. As explained above, that failure served as the basis of the state court's June 11, 1998, contempt order.

25. The debtor testified on August 5, 1999, that he made the bank payments *in accordance with a budget* he submitted to the bank. The bank has not agreed to that budget and the Court has not approved it.

26. At the hearing August 5, 1999, the debtor conceded that he had not made all of the payments when during closing arguments, his counsel suggested that if this Court were to allow the debtor to use the rents collected by the state court appointed receiver Southpace Properties he could makeup some of the missed payments. See note 3 above and the state court's orders of March 11, 1998, March 13, 1998, and June 11, 1998.

an insurance policy from the Lorna Village rent account funds, what other payments were made from these funds were made without an agreement from the bank or without an order of the Court.[27]

### IV. Conclusions of Law

■ For the reasons expressed below and based on the facts above, the Court finds that the Bankruptcy Administrator's *Motion to Convert or in the Alternative to Dismiss* is due to be granted and while the facts support both dismissal and conversion, the Court finds that dismissal is the better result.

Under section 1112(b) of the Bankruptcy Code, a court:

> may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, **for cause,** *including—*
>
> 1. continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;
>
> 2. inability to effectuate a plan;
>
> 3. unreasonable delay by the debtor that is prejudicial to creditors;
>
> 4. failure to propose a plan under section 1121 of this title within any time fixed by the court;
>
> 5. denial of confirmation of every proposed plan and denial of a request made for additional time for filing another plan or a modification of a plan;
>
> 6. revocation of an order of confirmation under section 1144 of this title, and denial of confirmation of another plan or a modified plan under section 1129 of this title;

> 7. inability to effectuate substantial consummation of a confirmed plan;
>
> 8. material default by the debtor with respect to a confirmed plan;
>
> 9. termination of a plan by reason of the occurrence of a condition specified in the plan; or
>
> 10. nonpayment of any fees or charges required under chapter 123 of title 28.

11 U.S.C. § 1112(b) (emphasis added).

Based on the evidence, the Court finds that section 1112(b) **cause** exists in this case. That cause includes the debtor's:

1. Willful failure to abide by orders of the Court;

2. Failure to act in a fiduciary capacity for his creditors;

3. Acts of bad faith;

4. Actions causing a continuing loss to or diminution of the estate;

5. Inability to demonstrate a reasonable likelihood of rehabilitation;

6. Inability to effectuate a plan; and,

7. Unreasonable delay that is prejudicial to creditors.

### A. Willful Failure to Abide by this Court's Orders; Failing to Act in a Fiduciary Capacity; and Bad Faith

#### 1. Willful Failure to Abide by this Court's Orders

##### a. Chapter 11 Operating Order

###### (1) Operating Reports

■ Courts have long recognized that one consequence of the failure to file reports required by a Chapter 11 operating order may be dismissal or conversion. In *In re Brauer,* 80 B.R. 903 (N.D.Ill.1987), the court held that the failure to file financial reports was bad faith and that such

---

**27.** Similarly disturbing is that testimony from Beal Bank demonstrated that the bank has not been provided with any documentation that it is listed as loss payee for the shopping center property. Similarly disturbing is that testimony from the debtor demonstrated that the last mortgage payment to the bank was made in October 1995, some three years before this bankruptcy was filed.

conduct was cause that justified the bankruptcy court's dismissal of the case. In *In re Cloisters of Brevard, Inc.,* 117 B.R. 722 (Bankr.M.D.Fla.1990), the court held that cause existed for converting a Chapter 11 case to Chapter 7 because the debtor failed to file monthly financial reports and disbursed estate funds without court approval. In *In re Crosby,* 93 B.R. 798 (Bankr.S.D.Ga.1988) the court recognized, but did not hold, that there is authority for dismissing a case for cause where a debtor did not file monthly operating reports until the morning of a hearing on the failure to file the reports. And in *In re Whitehurst,* 198 B.R. 981 (Bankr.N.D.Ala.1996), this Court found that failing to file Chapter 11 operating reports was section 1112(b) cause for dismissing or converting a Chapter 11 case.

Based on the above, this Court finds that this debtor's failure to file the required reports is section 1112(b) cause for dismissing or converting this case. The debtor willfully violated this Court's order that required the reports to be filed and in so doing, the debtor left this Court and the parties without the information the reports were designed to produce. The harm is both legal and practical. Neither can be ignored.

### (2) Plan and Disclosure Statement or Report on Plan or Disclosure Statement

■ Similarly, the debtor's failure to abide by paragraph N of this Court's Chapter 11 Operating Order is section 1112(b) cause for converting or dismissing this case. The debtor's *Motion for Extension of Time* does not satisfy his obligations to file a plan or disclosure statement within 120 days of filing his case, or failing those filings, to file a report explaining why those documents were not filed and what preparations are being made to file the documents and to offer a date when the documents would be filed. Again the debtor violated this Court's Chapter 11 Operating Order. And again this Court finds that such a violation is a willful failure to abide by the orders of the Court, and additional section 1112(b) cause.

### b. January 13, 1999, Order

In addition to his violation of this Court's Chapter 11 Operating Order, the debtor violated this Court's January 13, 1999, order. The debtor did not make the payments required by the order, and for the most part, he did not consult with Beal Bank or this Court about the use of the money regulated by the order. The debtor's violation of this order is additional section 1112(b) cause. And again, this Court finds that the debtor has willfully failed to abide by the orders of this Court.

### 2. Failing to Act in a Fiduciary Capacity

### a. Violation of Court Orders

■ A debtor in possession is required to act as a fiduciary. Because this debtor failed to abide by this Court's Chapter 11 operating order and its January 13, 1999, order, (two of the most significant requirements imposed on the debtor as prerequisites of his continued operation under the protections afforded by a Chapter 11 bankruptcy), the debtor has failed to act as a fiduciary for his creditors. The description by the court in the unrelated case of *In re Cloisters of Brevard, Inc.,* 117 B.R. 722 (Bankr.M.D.Fla.1990) is appropriate here. In *Cloisters* the Court wrote, "This case does not present a simple failure by the debtor to 'dot the i's and cross the t's,' as the debtor argues, nor does curing the defects cleanse the debtor of its initial wrongdoings. The debtor simply failed to exercise its fiduciary duty as a debtor-in-possession." *Id.* at 723 (citing *In re Devers,* 759 F.2d 751, 754 (9th Cir.1985)).

In regard to the January 13 order, the debtor did not make the ordered adequate protection payments. Similarly, but for one insurance payment, no other expense payments made with the funds collected as rents on the Lorna Village property have been approved or agreed to by the bank. The evidence is that the debtor has not

discussed any payment other than the insurance payment with the bank and this Court has not been asked to approve any other payment. Clearly, the debtor either has not paid any bills due in association with that property or has paid them in violation of this Court's order. In either event, the debtor has clearly disregarded his fiduciary duty to his creditors.

In regard to this Court's Chapter 11 Operating Order, the evidence is equally clear. The debtor failed to file required reports, which in turn failed to provide the Bankruptcy Administrator, this Court and the debtor's creditors with information necessary to make informed decisions. Clearly such conduct constitutes a failure to act in a fiduciary capacity.

### b. Management of Properties

As is discussed below in regard to a continuing loss to or diminution of this bankruptcy estate, the debtor's failure to properly manage the properties under his control has diminished the value of this estate. The Court finds that this consequence also constitutes a failure to act in a fiduciary capacity for creditors.

Based on the above, this Court finds that the debtor's failure to act in a fiduciary capacity for his creditors is additional section 1112(b) cause for converting or dismissing this case.

### 3. Bad Faith

As explained throughout this order, the debtor's violations are not merely technical, they justify dismissal or conversion. In *Phoenix Piccadilly, Ltd. v. Life Insurance Co. of Virginia, et al. (In re Phoenix Piccadilly, Ltd.)*, 849 F.2d 1393 (11th Cir.1988), the Court of Appeals for the Eleventh Circuit recognized that many factors may be considered in deciding whether the acts of the debtor are in bad faith and thus warrant dismissal of a Chapter 11 case. Writing for the court, Chief Judge Paul H. Roney explained:

> [T]here is no particular test for determining whether a debtor has filed a petition in bad faith. Instead, the courts may consider any factors which evidence "an intent to abuse the judicial process and the purposes of the reorganization provisions" or, in particular, factors which evidence that the petition was filed "to delay or frustrate the legitimate efforts of secured creditors to enforce their rights."

*Phoenix Piccadilly, Ltd. v. Life Insurance Co. of Virginia, et al. (In re Phoenix Piccadilly, Ltd.)*, 849 F.2d 1393, 1394 (11th Cir.1988) (quoting *Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.)*, 749 F.2d 670, 674 (11th Cir.1984)).[28] This Court has applied those general directives here.

First, in this case, the Court has considered whether the debtor should be allowed to flagrantly violate the orders of this, or any Court, with impunity. Because such violations are disrespectful to the Court, they are disrespectful to the judicial process. In the bankruptcy context, if a debtor wants the protection the Bankruptcy Code offers, that debtor must be willing to abide by the orders a court enters. In this case, this debtor has not. Because his actions were so substantial, and were continually abusive, the Court finds that those actions constitute acts of bad faith. Consequently, the debtor is no longer entitled to protection from the Bankruptcy Code. And he is not even entitled to a presumption that he will abide by this Court's orders in the future.

Second, without the information this Court's Chapter 11 operating order re-

---

**28.** Where, as in the instant case, a determination of a debtor's lack of good faith comes some time after the case was filed, but is based on circumstances that unfolded after the filing, a court may conclude that the case was initially filed in bad faith. But whether a case is filed without good faith or a debtor conducts the case without good faith, *Albany Partners, Ltd. v. Westbrook (In re Albany Part-* *ners)*, 749 F.2d 670 (11th Cir.1984) appears as authority to dismiss a case at any time for "cause," including an existing *or developing lack* of good faith. In that regard, this debtor's bad faith would serve alone, even if no other reason exists, as sufficient section 1112(b) cause for dismissal. See this Court's opinion in *In re Whitehurst*, 198 B.R. 981 (Bankr.N.D.Ala.1996).

quires, none of the beneficiaries for whom that information is intended can properly evaluate the debtor's activities. As discussed above, neither the Court, nor the Bankruptcy Administrator, nor the debtor's creditors have the information necessary to make reasoned choices about what actions to take in response to the debtor's activities. This Court's Chapter 11 operating order is not routine fluff. Compliance with that order is the first step to any successful Chapter 11 case. To disregard that order is to guarantee failure. This debtor has chosen the latter, an act this Court considers an act of bad faith.

Third, the debtor's failure to abide by this Court's January 13, 1999, order indicates, from an ethical standpoint, that the debtor does not respect the orders of this Court. From a financial standpoint, the debtor's failure to make monthly payments of $2,000.00 where the debtor claims interests in over $4,000,000.00 worth of real estate, indicates that the debtor either cannot afford to be in this Chapter 11 case, or simply does not care.

The Court finds that the above acts are acts of bad faith and are section 1112(b) cause for conversion or dismissal.

#### 4. Conclusion to Section IV.A.

For the reasons stated above, this Court concludes as a matter of law that cause exists pursuant to 11 U.S.C. § 1112(b) for dismissing or converting this case. That cause includes the debtor's:

1. Willful failure of the debtor to abide by orders of the Court;

2. Failure to act in a fiduciary capacity for his creditors; and

3. Acts of bad faith;

### B. Continuing Loss to or Diminution of the Estate; Absence of a Reasonable Likelihood of Rehabilitation; An Inability to Effectuate a Plan; and, Unreasonable Delay By the Debtor That is Prejudicial to Creditors.

In addition to the above, this Court has considered whether additional cause exists for converting or dismissing this case. And based on the evidence, the Court finds that there is. The debtor's actions demonstrate not only an inability to effectuate a plan and an unreasonable delay by the debtor that is prejudicial to creditors, but they also foster a situation for the continuing loss to or diminution of the estate. And finally, these actions are clear evidence of the absence of a reasonable likelihood of financial rehabilitation.

#### 1. Continuing Loss to or Diminution of the Estate

From the evidence presented at all of the hearings, including lay and expert testimony, (but particularly the real estate broker testimony at the March 10, 1999, hearing), the Court found that the conditions of the properties under the debtor's direct control (or at least those discussed above) are not ideal. These properties have not been administered to reap maximum benefits for the debtor or his creditors. All of the properties that can be leased are not being leased and the physical conditions of those that are, are not as they should be. Income from the properties has decreased and has not been maximized. And most of the properties in the context of this case have not been adequately marketed for that purpose.

The debtor's mismanagement of these properties has produced a continuing loss to or diminution of his bankruptcy estate which the Court considers as additional section 1112(b) cause for conversion or dismissal.

#### 2. Absence of a Reasonable Likelihood of Rehabilitation

The pending Chapter 11 case is a *voluntary* Chapter 11 case. With the desirable effects that accompany such a filing, of course, comes the inevitable negative consequences. A Chapter 11 filing is subject to all Bankruptcy Code provisions, and sometimes those increased responsibilities create too much of a burden on already

distressed situations. And sometimes, no matter how much desire a debtor may have to succeed, that burden is too great. With all respect due Mr. Sam Robino, the person, this Court does not believe that Mr. Robino, the debtor in possession in this case, can manage the affairs of this estate to effectuate a reorganization that will benefit him or his creditors.

This Court has held many procedural conferences and substantive hearings in this case. One constant was obvious. The debtor in possession was disorganized. Even with the approval by this Court for the employment of two professionals (an attorney and a certified public accountant, and the aid of another whose application is pending), Mr. Robino's management of this case is discouraging. This is reflected most prominently in his apparent inability to properly prepare his physical records and files. At almost every conference and hearing before the Court in which Mr. Robino participated, he brought piles of rumpled files containing disheveled documents. Whatever organization was contained therein was not apparent to anyone, although this Court presumes the debtor would quickly point out and vigorously defend his ability to locate any perceived source of relevant information.

Similarly, this Court has seen an increasing inability of Mr. Robino to communicate effectively with his attorneys and other professionals. Within the last few months, Mr. Robino, has filed ten pleadings **pro se,** presumably without the knowledge or advise of counsel, as many of those matters are outside the jurisdiction of this Court.

Based on *all* of the evidence, this Court must conclude that as a general proposition, Mr. Robino does not have the organizational skills to reorganize in bankruptcy, even if he has the financial ability to do so.

There is no contrary evidence. Consequently, there is a profound absence of a reasonable likelihood of rehabilitation, further section 1112(b) cause for conversion or dismissal.

### 3. An Inability to Effectuate a Plan and Unreasonable Delay By the Debtor That is Prejudicial to Creditors.

The above observations, factual findings, and legal conclusions are supported by the occurrence of the little progress made by the debtor to resolve his problems before coming to this Court and the little progress made in this case in the ten months since filing. The Court has suggested ways the parties could resolve their differences, and the Bankruptcy Administer has offered, and attempted mediation. All have failed.[29]

Before filing his Chapter 11 petition, the debtor was, and still is, involved in many lawsuits that pertain to his financial affairs. He has been for many years. Without this Court commenting on the substance of any of those suits, procedurally they have caused delay in any resolution of the financial problems that affect this debtor. Many involve family members, or estates of deceased family members and none appear to be close to reconciliation.[30]

After filing his case, the debtor failed to provide this Court with any substantive evidence that a successful completion of a Chapter 11 plan of reorganization is possible. In fact, the debtor's case was filed on November 17, 1999. His 120 day exclusivity period for filing a plan of reorganization expired on March 17, 1999. No plan has been filed. And no report has been filed explaining why a plan has not been filed.

Based on the above, simply because there is no evidence to support, or even suggest any other conclusion, the Court

---

**29.** On August 2, 1999, the debtor filed (pro se) a motion seeking mediation.

**30.** And unfortunately, the filing of this unsuccessful Chapter 11 case has delayed that resolve for the last year. And even more unfortunate, before the debtor filed the current case, the state court was making headway, and probably could have completed these matters in that time.

finds that the debtor does not have the ability to effectuate a plan and that his actions to date have produced unreasonable delay that is prejudicial to his creditors. Again, these findings establish section 1112(b) cause for conversion or dismissal.

### 4. Conclusion to Section IV.B.

For the reasons stated above, this Court concludes as a matter of law that additional cause exists pursuant to 11 U.S.C. § 1112(b) for dismissing or converting this case. That cause includes the debtor's:

1. Actions causing a continuing loss to or diminution of the estate;

2. Inability to demonstrate a reasonable likelihood of rehabilitation;

3. Inability to effectuate a plan; and,

4. Unreasonable delay that is prejudicial to creditors.

### C. Best Interests of Creditors

■ While there is sufficient "cause" to support a dismissal or conversion of this case, 11 U.S.C. § 1112(b) requires that to do either, the Court must find that dismissal or conversion must be in "the best interest of creditors and the estate." For the reasons stated above and below, the Court finds that either conversion or dismissal is in the best interest of creditors. And of the two, the Court finds that dismissal is the better option.

### 1. Conversion or Dismissal

As described above, the debtor is still involved in many lawsuits that pertain to his financial affairs. He has been for many years. These suits have hampered this case as well as any attempts to reorganize his financial affairs. As stated, those suits involve family members, or estates of deceased family members and none appear to be close to reconciliation. Until those are resolved, none of the debtor's creditors will benefit and in fact, as long as they continue, many creditors will be harmed by the delay and expense of the protracted litigation.[31]

The debtor has not provided this Court with any substantive evidence that a successful completion of a Chapter 11 plan of reorganization is possible in this Court. As stated above, the debtor's case was filed on November 17, 1999. His 120 day exclusivity period for filing a plan of reorganization expired on March 17, 1999. No plan has been filed. And no report has been filed, as required by this Court's Chapter 11 Operating order, explaining why a plan has not been filed.

Based on all of the evidence before the Court, if this Court were to find that conversion or dismissal were not proper, such a finding would ignore all of the evidence and would be, in this Court's opinion, arbitrary.

### 2. Dismissal is the Better Option

For the reasons stated above and below, the Court finds that dismissal is the better option.[32] The non-debtor parties disagree.[33]

Certainly this Court recognizes, as the non-debtor parties argue, that there is a possibility that conversion could benefit the state court litigants if a Chapter 7 trustee replaces the debtor in all pending litigation. These parties argue that a

---

**31.** The expenses associated with these matters are tremendous. Everyone is being penalized. At the hearing on August 5, 1999, the executor of the estate of Ester Robino testified that thus far *attorney fees for that estate alone have exceeded $115,000.00, and that any income he receives from properties under his management are currently being spent for these ongoing costs.*

**32.** The debtor argues of course against both dismissal or conversion and argues in favor of

moving toward confirmation. The Court has not considered that argument as the debtor has not offered any evidence to demonstrate that he will make a good faith attempt towards confirmation.

**33.** At the August 5, 1999 hearing, all non-debtor parties argued first in favor of the Bankruptcy Administrator's motion, and second in favor of conversion. Most of the parties opposed dismissal, Beal Bank did not.

trustee may either favor the non-debtor litigants' positions or would be able to settle the pending matters. Similarly if the trustee began administering all of the non-exempt assets of the debtor, some of the creditors claims could be satisfied. And finally, there is a possibility that appointment of a trustee would shorten the time for resolving the issues that consume these parties.

This Court is not as optimistic. Administration of this estate through the auspices of this Court would be unreasonably difficult, lengthy and expensive. For example, as is discussed below, even if this Court has jurisdiction over the probate matters that control this case, this Court would abstain from deciding those matters. As a consequence, if the case is converted and a trustee appointed, the trustee would be required to litigate most matters in state court, not this Court. And if the trustee were not able to settle all of the state court matters, those matters would be tried in state court, not this Court. And what happens when future disputes arise? Clearly the state court, not this Court will be called on to resolve those disputes.

These problems are significant enough, but when viewed in the light of the debtor's actions in the state court and in this Court, which this Court has done, the problems are magnified. Whether this case continues as a Chapter 11 case, is converted to a Chapter 7 case, or is dismissed, all of the evidence demonstrates that the debtor would not change his obstreperous behavior. Granted, a Chapter 7 or even a Chapter 11 trustee may be able to negotiate settlements in some of the pending probate matters and thus speed along resolutions of the many problems that face these parties, but even that could not be accomplished without the co-operation of the debtor. And at what price? Is the property in dispute really worth in excess of $4,000,000? Would a Chapter 7 trustee be required to care for and upgrade those properties until the properties could be sold at true market values? And then, who would benefit? [34]

The time and expense associated with such teeth pulling discourages this Court from believing that much could be accomplished. And most certainly, such actions would be costly to the estate both in time and money and would without question result in a continuing loss to or diminution of the estate, and would most certainly be detrimental to creditors.

On the other hand, even if this Court were to agree with all of the conversion arguments of the non-debtor parties discussed to this point, for the reasons stated below, the Court cannot find that conversion is a better option than dismissal. If for no other reasons, because of the state court's ability to enforce compliance and assure long term solutions and because probate matters are inherently within the purview of the state courts, this Court must choose dismissal over conversion. The reasons for this choice are discussed below.

### a. The State Court Has the Ability to Enforce Immediate Compliance and Assure Long-term Solutions

Given the current state of the litigation involving the debtor's assets, this Court does not believe that any entity, *other than the state court*, can administer the debtor's assets without unnecessary expense, protracted litigation, and the misuse of time.

#### (1) Immediate Compliance

There are few punishments as severe as the loss of liberty. And although the threat of such may not have previously

---

34. Unsecured claims of $68,377.92 have been filed in this case. Of that amount $32,171.38 is listed as professional fees. In his bankruptcy petition, the *debtor listed $339,277* of unsecured, non-priority claims. Within that amount the debtor included an *unsecured promissory note to his wife, of $260,000*, leaving a *balance of $79,277*. Within that balance, $33,613 includes fees for professionals hired by the debtor for work performed prior to his filing this Chapter 11 case. If this case is converted, who would benefit?

convinced the debtor to act in a proper manner, this Court is convinced that the threat of future incarceration will. The state court has the immediate ability to inflict such an incentive.

### (2) Assure Long-term Solutions

The *Motion to Remove Sam Raine, Jr. as Executor of the Estate of Ester Romano Robino*, filed by the debtor pro se is representative of the many probate related matters pending before this Court. None can be resolved until some court determines the rights of the interested parties in the assets of the debtor's mother's estate and the assets of the debtor's brother's estate and provides for enforcement of those determinations. Clearly, such a requirement begs the question, *when (not if) future disputes arise about these matters, whether now or long after this case is concluded, which court will be called on to resolve them?*[35]

### b. Probate Matters are Inherently Within the Purview of the State Courts

Even if this Court has jurisdiction over these matters, should it exercise that jurisdiction? The answer is, no.

### (1) This Court's Jurisdiction and Option of Abstention

Section 1334 of Title 28 confers on district courts: (a) original and exclusive jurisdiction over all cases filed under the Bankruptcy Code; (b) original but not exclusive jurisdiction of (1) all civil proceedings arising under the Bankruptcy Code; (2) all civil proceedings arising in cases under the Bankruptcy Code; or (3) all civil proceedings related to cases under the Bankruptcy Code; and, (c) in a case commenced under the Bankruptcy Code, exclusive jurisdiction over all property of the debtor, wherever located, and of property of the bankruptcy estate. 11 U.S.C. §§ 1334(a), (b) & (e).

■ A district court *may*, pursuant to 11 U.S.C. § 1334(c)(1), abstain from hearing a proceeding arising under the Bankruptcy Code, or arising in or related to cases under the Code, when to do so *is in the interest of justice, or in the interest of comity with state courts or respect for state law*. A district court *must*, pursuant to 11 U.S.C. § 1334(c)(2), abstain from hearing a civil proceeding if: (a) a timely motion to abstain is made by a party to the proceeding; (b) the proceeding is based on a state law claim or state law cause of action; (c) the proceeding is related to a case under the Code but did not arise under the Code or in a case under the Code; (d) the proceeding could not have been commenced in a court of the United States absent jurisdiction under section 1334; and, (e) the proceeding is commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction.[36]

### (2) Jurisdiction

■ Bankruptcy judges have no independent jurisdiction over bankruptcy matters other than that which flows from the district courts. This transfusion occurs by way of 28 U.S.C. § 157.

Under section 157, a district court may refer to bankruptcy judges in the same district, any matters over which the district court has jurisdiction under 28 U.S.C. § 1334. Pursuant to 28 U.S.C. § 1334(a)

---

**35.** It is obvious that even if this Court were to retain this case, decide all of the issues relating to the probate matters, and then confirm a plan of reorganization for the debtor, **when** future disputes about these probate matters arise, the state court not this court would be the proper venue. Does anyone expect this Court to retain jurisdiction over these matter for the purpose of resolving the disputes that arise in the generations to come?

**36.** This Court may sua sponte question its jurisdiction, *Johansen v. Combustian Eng'g, Inc.*, 170 F.3d 1320, 1328 n. 4 (11th Cir. 1999), *cert. denied*, —— U.S. ——, 120 S.Ct. 329, 145 L.Ed.2d 256 (1999), and sua sponte determine whether to abstain from hearing a matter. *Carver v. Carver*, 954 F.2d 1573, 1579 (11th Cir.1992), *cert. denied*, 506 U.S. 986, 113 S.Ct. 496, 121 L.Ed.2d 434 (1992).

that jurisdiction includes exclusive and original jurisdiction over cases filed under the provisions of the Bankruptcy Code, as well as, pursuant to 28 U.S.C. § 1334(b), original, but not exclusive, jurisdiction over civil proceedings *arising under* the Code, civil proceedings *arising in* cases filed under the Code, and civil proceedings *related to* cases filed under the Code.

Because the pending matter, and the related probate matters are "proceedings" and not "cases," if this Court is able to exercise any section 157, district court jurisdiction over that proceeding, this Court must be able to characterize the proceedings as either civil proceedings *arising under* the Bankruptcy Code, civil proceedings *arising in* the pending case, or civil proceedings *related to* the pending case. Otherwise, this Court would not have jurisdiction to administer the pending matter or its related actions.

### (a) Arising Under or Arising In

Section 157 explains arising under proceedings and arising in proceedings. And defines them as "core proceedings" under 28 U.S.C. § 157. **Arising under** is commonly defined as including proceedings involving causes of action created by or determined by a statutory provision of Title 11. *Wood v. Wood (In re Wood)*, 825 F.2d 90, 96 (5th Cir.1987). Examples include actions to determine: preferences under 11 U.S.C. § 547; claims of exemptions under 11 U.S.C. § 522; claims of discrimination under 11 U.S.C. § 525; and trustees' avoiding powers under 11 U.S.C. § 544 *et al.* **Arising in** is commonly defined as including proceedings that although do not

arise under Title 11, would be proceedings that would not exist outside of bankruptcy. *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir.1987). Examples include the filing of proofs of claims, the filing of complaints to determine dischargeability, administrative matters, counterclaims by the bankruptcy estate against filed claims, allowances or disallowances of claims and plan confirmation hearings. If this Court has jurisdiction over the pending matters through the "arising in" or "arising under" provisions, that jurisdiction must come through Section 157.[37]

A nonexclusive list of "arising in" or "arising under" proceedings is published in subsection (b)(2) of section 157, but there is, not surprisingly, no reference to pending probate proceedings, and none of the specific items listed could reasonably be construed as encompassing such proceedings. If anyone does, it must be the general provisions of 157(b)(2)(O). That subsection is a catch-all provision that includes within the definition of a core proceeding "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor relationship. . . ." 28 U.S.C. § 157(b)(2)(O).

Because any arising under or arising in jurisdiction that this Court could exercise *must come from that section,* this Court must conclude, based on the above, if the remote general provision of subsection 157(b)(2)(O) does not confer such jurisdiction, if there is any jurisdiction at all, that jurisdiction exists only if the pending matter and its related matters are proceedings "related to" the debtor's bankruptcy case, as defined in 28 U.S.C. § 157(c)(1).

---

**37.** There are of course matters between the affected parties, that are matters that clearly relate to the debtor's probate matters, and those matters certainly fall within this Court's arising in or arising under jurisdiction. For example, the administrator of the debtor's deceased brother's estate filed an adversary proceeding in this Court against the debtor to determine the dischargeability of debt, clearly a section 157(b)(2)(*l*) proceeding. But again, the allegations in that complaint evolve from the probate matters being litigated among the parties before this Court. As is discussed below regarding the issue of whether this Court should abstain from hearing those matters, until those probate matters are completed, this Court should not attempt to administer the assets of this bankruptcy estate. And for the reasons expressed herein, for this Court to wait to do so would be not only unreasonable but costly to everyone. The state court can resolve all of these matters without the assistance of this Court.

## (b) Related To

A proceeding is "related to" a case filed under the Bankruptcy Code if it "could conceivably have an effect on the estate being administered in bankruptcy...." *Id.* (quoting *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d 784, 788 (11th Cir.1990)). See also *In the Matter of Lemco Gypsum, Inc.*, 910 F.2d 784, 788 (11th Cir.1990). And pursuant to 28 U.S.C. § 157(c), a bankruptcy judge may hear a proceeding that is "related to" a bankruptcy case. But "for federal bankruptcy jurisdiction to exist, a case must at minimum 'relate to' a case under title 11 [of the Bankruptcy Code]." *Community Bank of Homestead v. Boone (In re Boone)*, 52 F.3d 958, 960 (11th Cir.1995) (parenthetical added).

## 3. Abstention

Discretionary abstention is governed by 28 U.S.C. § 1334(c)(1).[38] A bankruptcy court may abstain from hearing a proceeding arising under title 11, or arising in or related to cases under title 11, when to do so is in *the interest of justice, or in the interest of comity with state courts or respect for state law.*[39] In this case, this Court must conclude that the debtor's pending probate matters fall within all three exceptions. For this Court to abstain from hearing these matters would be in the interest of justice, in the interest of comity with state courts, and out of a respect for state law. The cases discussed below explain.

Federal courts have long recognized that probate matters are inherently within the purview of the state courts and these courts have considered that reason significant enough for bankruptcy court abstention.[40] Such was the result when

---

**38.** As noted above, the discretionary abstention provisions of 28 U.S.C. § 1334(c)(1) allow this Court to raise this issue *sua sponte.*

**39.** The "arising" and "related" language of section 1334(c)(1) is identical to the "arising" and "related" criteria of jurisdiction; consequently, if a matter is properly removed to a court with "arising" or "related" jurisdiction, the abstention provisions of section 1334(c)(1) may be considered. See this Court's discussions in *Twyman v. Wedlo, Inc.*, 204 B.R. 1006 (Bankr.N.D.Ala.1996); *St. Vincent's Hospital v. Norrell (In re Norrell)*, 198 B.R. 987 (Bankr. N.D.Ala.1996); *Roddam v. Metro Loans (In re Roddam)*, 193 B.R. 971 (Bankr.N.D.Ala.1996).

Factors to consider in determining whether discretionary abstention is appropriate include:
(1) the effect of abstention on the efficient administration of the bankruptcy estate;
(2) the extent to which state law issues predominate over bankruptcy issues;
(3) the difficulty or unsettled nature of the applicable law;
(4) the presence of a related proceeding commenced in state court or other non-bankruptcy court;
(5) the basis of bankruptcy jurisdiction, if any, other than 28 U.S.C. § 1334;
(6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;
(7) the substance rather than form of an asserted "core" proceeding;
(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;
(9) the burden of the bankruptcy court's docket;
(10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;
(11) the existence of a right to a jury trial; and
(12) the presence in the proceeding of non-debtor parties.
*In re Tucson Estates, Inc.*, 912 F.2d 1162, 1167 (9th Cir.1990) (citing *In re Republic Reader's Serv., Inc.*, 81 B.R. 422, 429 (Bankr. S.D.Tex.1987)).

**40.** Certainly, "Bankruptcy courts routinely interpret state law in order to resolve disputes in bankruptcy cases." *Foster v. Farmers and Merchants Bank (In re Foster)*, 105 B.R. 746, 750 (Bankr.M.D.Ga.1989) (citing *In re Wilson*, 85 B.R. 722, 727 (Bankr.E.D.Pa.1988)). However, "Whether the bankruptcy court should abstain must be decided 'upon consideration of the totality of the circumstance specific to each case.'" *Perlow v. Perlow*, 128 B.R. 412, 416 (E.D.N.C.1991) (citing *In re Wilson*, 85 B.R. 722, 728 (Bankr.E.D.Pa. 1988)).

this issue came before another member of this Court some 14 years ago. In *Lewis v. Wells (In re Bob Lee Beauty Supply)*, 56 B.R. 17 (Bankr.N.D.Ala.1985), where a Chapter 11 bankruptcy petition was filed in the Northern District of Alabama while a probate administration was pending in Mississippi, Judge Stephen B. Coleman eloquently wrote:

This Court finds that this matter is one in which the bankruptcy court should not interfere or attempt to take jurisdiction over the estate property being administered by the Chancery Court of Forrest County, Mississippi, and it is a case in which abstention is clearly indicated. Section 1334(c)(1) of Title 28 U.S.C. provides:

(c)(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

Mr. Justice Black recognized the problems that could arise by the federal court's interference in matters peculiarly involving the interpretations of title to real estate under the laws of the several states in the early case of *Thompson v. Magnolia Petroleum Company*, 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876 (1940).

Congress in the passage of The 1898 Bankruptcy Act was very conscious of state law and respect for state courts and left such jurisdiction to the state courts. It was not until the Dischargeability Act of 1970 and Bankruptcy Reform Act of 1978 that jurisdiction was expanded to take away from state courts the right to make and to interpret state law decisions and to remove cases from the state courts to bankruptcy courts. This partly led to the denial of such expanded jurisdiction to the bankruptcy courts in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), with all its constitutional implications.

****

Judge Coleman went on to explain:

Bankruptcy Judge C. Albert Parente said *In re Lafayette Radio Electronics Corp.*, 8 B.R. 973, 977 (1981) (Bkrtcy. E.D.N.Y.1981):

Abstention is proper where, as in [*In re*] *Jewel Terrace*, [3 B.R. 36 Bkrtcy.E.D.N.Y.1980)] there is already a pending state court action, as that action serves as the exceptional circumstance necessary to justify deflection. As the Supreme Court stated: "... It is the court's duty to [abstain] when a suit is pending in the state courts, where the state questions can be conveniently and authoritatively answered, at least where the parties to the federal court action are not strangers to the state action." *Meredith*, 320 U.S. 228, 236, 64 S.Ct. 7, at 11, 88 L.Ed. 9. The rationale of this principle is that abstention avoids the potential conflict and further avoids duplication by the federal court, of the state court procedures.

The doctrine of abstention was further expanded in the case of *In re Zamost*, 7 B.R. 859, 862 (Bkrtcy.S.D.Cal.1980), in which is set out five basic areas in which abstention would be proper. This Court refers to Number 5:

Where a state action is pending, federal courts may stay or dismiss the case in the interest of judicial administration, comprehensive disposition of litigation, conservation of judicial resources, or fairness to the parties.

In the case of *Bank of Hamburg v. Tri–State Sav. & Loan Assoc.*, 69 F.2d 436 (8th Cir.1934), the Circuit Court of Appeals refused to interfere with the administration of an estate by the bankruptcy court.

Judge Rufus Reynolds of the Middle District of North Carolina in a Chapter

13 case follows *Thompson v. Magnolia Petroleum Company,* and stated:

> There were very few reported decisions under 1979 Code with respect to § 147(d). However, it seems clear that the legislators have incorporated the *Thompson* ruling in the Code. In a 1980 Code case, *Matter of Jewel Terrace Corporation,* 3 B.R. 36 (1980), the Bankruptcy Court of the Eastern District of New York held that "where there has been a prior state court proceeding or issues involving state court expertise such as the landlord tenant area, it is proper to defer to the state court," 3 B.R. at 39. There is no doubt that the rights of ownership in a joint bank account with the rights of survivorship is clearly a question of state law requiring state expertise.

*In re Kimrey,* 10 B.R. 466, 468 (Bkrtcy. M.D.N.C.1981).

> This Court is satisfied that the consideration of justice and proper regard to comity existing between state and federal court renders this case one for abstention from interference in the administration of the estate by the Mississippi court....

*Id.* at 19–20.

Recent opinions agree with Judge Coleman. In *FDIC v. Derryberry (In re Wicecarver),* 110 B.R. 957 (Bankr.D.Kan.1990), *appeal dismissed,* 1991 WL 33140 (D.Kan., Feb. 12, 1991) the bankruptcy court found that abstention was appropriate in view of a state probate court decision governing distribution of the assets in question. In doing so Chief Judge Benjamin E. Franklin wrote:

After reviewing the Court's Exhibit One (the Judgment of the Probate Court) this Court further finds that the decision of the Missouri Probate Court ordered distribution of the assets of the Estate of L.O. Wicecarver and that said decision was a final judgment.

> This Court finds that out of respect for the Missouri state law it should abstain from this case. *In re Illinois-California Exp., Inc.,* 50 B.R. 232 (Bankr.D.Colo.1985) ("The decision to abstain is reinforced by the interest promoted by exercising respect for state law." *Id.* at 241); *In re Williams,* 88 B.R. 187 (Bankr.N.D.Ill.1988) ("This Court believes that in the interests of comity the resolution of this issue is best left to the Illinois state courts to decide." *Id.* at 190).

*Id.* at 960.

In *Tarkio College v. Bower (In re Tarkio College),* 137 B.R. 34 (W.D.Mo.1992) where a Chapter 11 debtor sought the turnover of a portion of a deceased's estate, on an executrix' motion for abstention, the district court adopted the recommendation of the bankruptcy court that abstention was appropriate.

 Applying the criteria discussed above to the facts of this case, (facts that demonstrate that all aspects of this bankruptcy estate are being effected by the debtor's probate interests) and in considering the factors most courts consider when addressing abstention (see note 39 above), this Court would find, if required to do so, that if this Court has jurisdiction over this debtor's probate matters, that this Court should not exercise that jurisdiction but should abstain in favor of the state court's jurisdiction.[41]

**41.** This Court has not considered the mandatory abstention provisions of 11 U.S.C. § 1334(c)(2). A bankruptcy court must abstain from hearing a civil proceeding if: (1) a timely motion to abstain is made by a party to the proceeding; (2) the proceeding is based on a state law claim or state law cause of action; (3) the proceeding is related to a case under title 11 but did not arise under title 11 or in a case under title 11; (4) the proceeding could not have been commenced in a court of the United States absent jurisdiction under section 1334; and, (5) the proceeding is commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction.

Unlike the statutory provision that controls discretionary abstention, which allows a court to consider discretionary abstention on the

#### 4. Conclusion to Section IV.C.

For the above reasons, the Court finds that dismissal is in the best interest of creditors.

### V. Conclusion

For the reasons expressed in this order and memorandum opinion, the Court finds that the Bankruptcy Administrator's *Motion to Convert or in the Alternative to Dismiss* is due to be granted, and that this case and its related adversary proceedings are due to be dismissed pursuant to 11 U.S.C. § 1112, for **cause,** including the debtor's:

1. Willful failure to abide by orders of the Court;

2. Failure to act in a fiduciary capacity for his creditors;

3. Acts of bad faith;

4. Actions causing a continuing loss to or diminution of the estate;

5. Inability to demonstrate a reasonable likelihood of rehabilitation;

6. Inability to effectuate a plan; and,

7. Unreasonable delay that is prejudicial to creditors.

All other pending matters are either moot or will be dismissed, by separate orders.

### VI. Order On the Main Case Matters

Based on the above, it is therefore **ORDERED, ADJUDGED and DECREED** that:

1. The Bankruptcy Administrator's *Motion to Convert or in the Alternative to Dismiss* is **GRANTED** and this case is **DISMISSED;** and

2. Because this dismissal is based in part on the debtor's willful failure of the debtor to abide by orders of the Court, pursuant to **11 U.S.C. § 109(g),** the debtor may not be a

debtor under Title 11 for at least the next 180 days.

It is further **ORDERED** that the:

3. *Motion for Appointment of Trustee* (filed on December 2, 1998 by George Babakitis, Administrator Ad Colligendum for the Estate of Joseph Thomas Robino, Jr.—Proceeding No. 11) is **MOOT;**

4. *Beal Bank's Renewed Motion for Relief From The Automatic Stay* (filed on March 1, 1999—Proceeding No. 37) is **MOOT;**

5. *Motion for Extension of Time* (to file Chapter 11 Plan and Disclosure Statement filed on March 10, 1999 by the Debtor (through its attorney)—Proceeding No. 41) is **MOOT;**

6. *Objection to Debtor's Motion for Extension of Time* (filed on April 7, 1999 by the Bankruptcy Administrator—Proceeding No. 46) is **MOOT;**

7. *Motion to Convert or in the Alternative to Dismiss* (filed on July 1, 1999 by the Bankruptcy Administrator—Proceeding No. 66) is **MOOT;**

8. *George Babakitis' Motion for Emergency Hearing on His Motion for Relief from Automatic Stay* (filed on July 8, 1999—Proceeding No. 70) is **MOOT;**

9. *Objection to Appointment of a Trustee* (filed on March 10, 1999 by Richard G. Poff, Jr.—Proceeding No. 40) is **MOOT;**

10. *Order* (filed on June 9, 1999 by the Debtor, **pro se**—Proceeding No. 60) is **MOOT;**

11. *Order* (filed on June 9, 1999 by the Debtor, **pro se**—Proceeding No. 61) is **MOOT;**

12. *Trustee's and Debtor's Objection to Claim* (of Beal Bank) (filed on June

court's motion, the comparable provision controlling mandatory abstention requires a motion by one of the parties before that issue is properly before the Court. No motion to abstain was filed in this matter. See this Court's discussion of abstention in *Twyman v.*

*Wedlo, Inc.,* 204 B.R. 1006 (Bankr.N.D.Ala. 1996); *St. Vincent's Hospital v. Norrell (In re Norrell),* 198 B.R. 987 (Bankr.N.D.Ala.1996); *Roddam v. Metro Loans (In re Roddam),* 193 B.R. 971 (Bankr.N.D.Ala.1996).

21, 1999 by the Debtor, **pro se**—Proceeding No. 63) is **MOOT**;

13. *Motion to Remove Sam Raine, Jr. as Executor of the Estate of Esther Romano Robino* (filed on June 29, 1999 by the Debtor, **pro se**—Proceeding No. 65) is **MOOT**;

14. *Motion for New C.P.A.* (filed on August 2, 1999 by the Debtor, **pro se**—Proceeding No. 73) is **MOOT**;

15. *Motion for Mediation* (filed on August 2, 1999 by the Debtor, **pro se**—Proceeding No. 74) is **MOOT**;

16. *Motion for Special Examiner* (filed on August 4, 1999 by the Debtor, **pro se**—Proceeding No. 75) is **MOOT**;

17. *Motion for the Court to Take Judicial Notice* (filed on August 4, 1999 by the Debtor, **pro se**—Proceeding No. 76) is **MOOT**;

18. *Debtor's First Motion to Amend Creditor's List* (filed on August 4, 1999 by the Debtor, **pro se**—Proceeding No. 77) is **MOOT**;

19. *Debtor's Motion to Transfer Cases from the 10th Judicial Circuit of Alabama and the Probate Court of Jefferson County, Alabama, to the United States Bankruptcy Court* (filed on August 5, 1999 by the Debtor, **pro se**—Proceeding No. 78) is **MOOT**;

20. *Application for Approval of Employment of Professional Person* (filed on January 7, 1999 by the Debtor requesting the employment of the law office of Mark B. Turner—Proceeding No. 22) is **MOOT**.

And based on the Memorandum Opinion entered herein, the Court finds that:

1. *George Babakitis, As Administrator Ad Colligendum of the Estate of Joseph T. Robino, Jr. vs. Sam Robino,* Adversary Proceeding No. 99–00047, is due to be dismissed. A separate order in conformity with the memorandum opinion herein will be entered in that proceeding; and,

2. *Sam Robino vs. Southpace Properties, Inc.,* Adversary Proceeding No. 99–00169, is due to be dismissed. A separate order in conformity with the memorandum opinion herein will be entered in that proceeding.